UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
ABDULRAHMAN ALHARBI,           )
                               )
                Plaintiff,     )
                               )
v.                             )        Civil Action
                               )        No. 14-11550-PBS
GLENN BECK; THE BLAZE, INC.;   )
MERCURY RADIO ARTS, INC.; and  )
PREMIERE RADIO NETWORKS, INC., )
                               )
                Defendants.    )
_____)
```

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

NELSON MULLINS RILEY & SCARBOROUGH LLP

Peter J. Haley (BBO # 543858)
Patrick T. Uiterwyk (BBO # 665836)
One Post Office Square – 30th Floor
Boston, Massachusetts 02109-2127
Telephone:    (617) 573-4700
Facsimile:    (617) 573-4710
Email: *peter.haley@nelsonmullins.com*
Email: *patrick.uiterwyk@nelsonmullins.com*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.  Mr. Alharbi Is A Private Figure, Not A Limited-Purpose Or Involuntary Public Figure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  Alharbi Did Not Thrust Himself To The Forefront Of The Boston Marathon Bombing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  Defendants' Memorandum Reasserts Patently False Allegations As Undisputed Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.  Alharbi Is Not One Of The "Exceedingly Rare" Instances Of An "Involuntary Public Figure." . . . . . . . . . . . . . . . . . . . . . . . . 10

II.  Actual Malice Can Be Inferred From The Allegations Contained In The Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  The Court's Analysis Must Account For The Legitimate State Interest Underlying The Law Of Libel: Compensating Individuals For Harm Inflicted By Defamatory Falsehoods. . . . . . . . . . . . . . . . . . . . . . 15

IV.  As Necessary, Plaintiff Should be Granted Leave to Amend. . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## <u>TABLE OF AUTHORITIES</u>

**Case Law**                                                                 **Page**

*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    267 F.3d 30 (1st Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7n4

*Appleby v. Daily Hampshire Gazette*,
    395 Mass. 32, 478 N.E.2d 721 (1985) . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . .   16n7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 14

*Atlanta Journal-Constitution v. Jewell*,
    555 S.E.2d 175 (Ga. Ct. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Bruno & Stillman. v. Globe Newspaper Co.*,
    633 F.2d 583 (1st Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6

*Conroy v. Fall River Herald News Co.*,
    306 Mass. 488, 28 N.E.2d 729 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 6

*Dulgarian v. Stone*,
    420 Mass. 843, 652 N.E.2d 603 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16n7

*Eyal v. Helen Broad. Corp.*,
    411 Mass. 426, 583 N.E.2d 228 (1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16n7

*Flotech, Inc. v. E.I. Du Pont de Nemours Co.*,
    627 F. Supp. 358 (D. Mass. 1985), *aff'd* 814 F.2d 775 (1st Cir. 1987) . . .. . . . . .. . .   6

*Foretich v. Capital Cities/ABC, Inc.*,
    37 F.3d 1541 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Fox Entm't Grp., Inc. v. Abdel-Hafiz*,
    240 S.W.3d 524 (Tex. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 14

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 10-11

*Hatfill v. New York Times Co.*,
    488 F. Supp. 2d 522 (E.D. Va. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12-13

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Jones v. Taibbi*,
    400 Mass. 786, 512 N.E.2d 260 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Levesque v. Doocy*,
    560 F.3d 82 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 14

*Levine v. CMP Publications, Inc.*,
    738 F.2d 660 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 6

*Lluberes v. Uncommon Prods., LLC*,
    663 F.3d 6 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6

*Lyons v. Globe Newspaper Co.*,
    612 N.E. 2d 1158, 415 Mass. 258 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Mandel v. Boston Phoenix, Inc.*,
    456 F.3d 198 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .   5n3

ii

**Case Law** **Page**

*Pendleton v. City of Haverhill,*
    156 F.3d 57 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 12

*Penobscot Indian Nation v. Key Bank of Maine,*
    112 F.3d 538 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5n3

*Petition of Retailers Commercial Agency, Inc.,*
    342 Mass. 515, 174 N.E.2d 376 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Philadelphia Newspapers, Inc. v. Hepps,*
    475 U.S. 767 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rosenblatt v. Baer,*
    383 U.S. 75 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Rosenbloom v. Metromedia, Inc.,*
    403 U.S. 29 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Schatz v. Republican State Leadership Comm.,*
    669 F.3d 50 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Time, Inc. v. Firestone,*
    424 U.S. 448 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 6

*Torrens v. Lockheed Martin Servs. Grp., Inc.,*
    396 F.3d 468 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Torres–Alamo v. Puerto Rico,*
    502 F.3d 20 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Bello,*
    194 F.3d 18 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wolston v. Reader's Digest Ass'n, Inc.,*
    443 U.S. 157 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Wormwood v. Lee,*
    226 Mass. 339, 115 N.E. 494 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14-15

## SUMMARY OF ARGUMENT

Contrary to the assertions made by the Defendants, the Plaintiff, through his Complaint in this civil action, does not seek to "punish" the Defendants or to limit speech on public issues. As expressed by Justice Stewart, he seeks only the right of any man to "the protection of his own reputation from unjustified invasion and wrongful hurt" reflecting the "basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (Stewart, J., concurring).

The gravamen of Defendants' Rule 12(b)(6) motion is that the Complaint must be dismissed because it does not adequately plead "actual malice." *See Defendants' Memorandum at p. 2.* Actual malice must be pleaded, the Defendants argue, because Plaintiff is a "public figure." Defendants claim that Plaintiff is a public figure because (i) he faced scrutiny by law enforcement officials in the immediate aftermath of the April 15, 2013 Boston Marathon bombings, and (ii) while still recuperating from the injuries he sustained from those bombings, he purportedly made statements to three separate publications denying any involvement.

An individual does not become a public figure due to the fact that he is investigated in connection with a crime, and then states publicly that he was not involved in the crime for which he was investigated. *See Pendleton v. City of Haverhill*, 156 F.3d 57, 68 (1st Cir. 1998) (describing as a "canard" the argument that an individual becomes a public figure "merely by defending oneself publicly against accusations," and finding that "an individual's involvement in a criminal proceeding—even one that attracts substantial notoriety—is not enough, in itself, to ingeminate public figure status"); *see also Time, Inc. v. Firestone*, 424 U.S. 448, 455 (1976) ("Nor do we think the fact that respondent may have held a few press conferences during the divorce proceedings in an attempt to satisfy inquiring reporters converts her into a 'public

1

figure.'"); *Levine v. CMP Publications, Inc.*, 738 F.2d 660, 672 (5th Cir. 1984) (applying Texas law and quoting with approval *Firestone*'s conclusion that holding "press conferences during the ... proceedings in an attempt to satisfy inquiring reporters" did not convert one into a public figure); *accord Conroy v. Fall River Herald News Co.*, 306 Mass. 488, 28 N.E.2d 729, 730 (1940) ("One attacked by a slander or libel has a right to defend himself"). Yet this is precisely what the Defendants argue: because the plaintiff Alharbi confirmed to members of the press that he was a victim not involved in the bombing, he transformed himself into a public figure.[1]

To accept this "bad luck" theory of defamation would be to return to the doctrine advanced by the plurality opinion in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 52 (1971), which held that private persons who were involved in a public or general concern, were required to prove that the defendant published a defamatory falsehood with reckless disregard for whether or not it was false. The United States Supreme Court has repeatedly repudiated such a standard. *See, e.g.*, *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 167 (1979); *Time, Inc. v. Firestone*, 424 U.S. 448, 452 (1976); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974).

Even if it was assumed that the Plaintiff was a "public figure" (he is not), the allegations set forth in the Complaint still permit the Court to draw the reasonable inference that the Defendants are liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Because direct evidence of actual malice is rare, it may be proved through inference, and circumstantial evidence." *Levesque v. Doocy*, 560 F.3d 82, 90-91 (1st Cir. 2009) (internal citations omitted); *Fox Entm't Grp., Inc. v. Abdel-Hafiz*, 240 S.W.3d 524, 533 (Tex. App. 2007) ("Actual malice … can [be] prove[d] through objective evidence about the publication's circumstances and the defendant's conduct at the time of publication."); *Wormwood v. Lee*, 226

---

[1] Defendants rely almost exclusively on federal and Massachusetts law in their brief. As the distinction to be drawn between private and public figures stems from federal jurisprudence—namely, a long line of United States Supreme Court cases—Plaintiff does not address the choice of law issue.

Mass. 339, 341, 115 N.E. 494 (1917) ("[i]n an action for slander, upon proof that words in themselves actionable have been spoken, there is a presumption of malice as an inference of law").

It is not disputed that by April 16, 2013—the day after the Boston Marathon bombing— law enforcement officials had publicly declared that the Plaintiff was not a suspect or a person of interest, and was in fact a victim of the bombing. *See* Complaint, ¶1 ("The responsible officials quickly concluded that Mr. Alharbi, other than being injured in the attacks, had no involvement in the attacks."); *see also* DEF-0089 (The Boston Globe, April 16, 2013 ("He has been checked out," said a law enforcement official briefed on the investigation. "He is not involved. He is just a victim."). Despite this, in the following weeks—well into May 2013—the Defendants continuously stated that Mr. Alharbi was responsible for the bombings and had, at the very least, funded the attacks. *See* Complaint at ¶¶1, 15-18. In short, from these facts—which are explicitly alleged in the Complaint—the Court (and the ultimate fact-finder) can infer that the Defendants have not acted in good faith and thus with "actual malice." For these reasons, the Defendants' motion to dismiss must be denied.

## **STATEMENT OF FACTS**

The Plaintiff, Abdulrahman Alharbi ("Alharbi"), is a 20 year old Saudi Arabian student who resides in Revere, Massachusetts. *Complaint at ¶1.* Defendant Glenn Beck ("Beck") is a commentator who hosts a daily radio and television show which is broadcast to a substantial audience throughout the United States and published over the internet throughout the world. *Id. at ¶12.* The show is owned by The Blaze, Inc. ("The Blaze") and its parent corporation, Mercury Radio Arts, Inc. ("Mercury"). *Id. at ¶13.* Premiere Radio Networks, Inc. ("Premiere"), a Delaware corporation with a usual place of business in California, syndicates and distributes the

show to radio stations throughout the United States. *Id. at ¶¶6, 14.* Beck is a resident of Texas, where the show is conducted and broadcast; The Blaze and Mercury have a usual place of business in Texas. *Id. at ¶¶3-5.*

Alharbi was injured at the April 15, 2013 Boston Marathon bombing ("Boston Marathon Bombing") as a spectator. *Complaint at ¶¶1, 9-10.* In the immediate aftermath of the bombings, while still being treated for physical injuries incurred as a result of the explosive devices, Alharbi was questioned by federal authorities (like many others), who then also searched his apartment with his permission. *Id. at ¶1.* These government officials quickly determined that Plaintiff was a victim and had no involvement in the attacks.[2] *Id.*

Despite this, Beck broadcast repeated statements—which were distributed by The Blaze, Mercury, and Premiere—indicating that Plaintiff was an active participant responsible for the Boston Marathon Bombing. *Complaint at ¶¶15, 26.* Beck likewise questioned the motives of federal officials in failing to pursue or detain Alharbi, stating that Alharbi had engaged in criminal activity that resulted in mass injury to others, but was being protected by the wrongful acts of others covering up his crimes. *Id. at ¶16.* Again, despite the fact that Alharbi had been publicly cleared of any wrong-doing and declared a victim of the attack, Beck falsely accused him of being a criminal who funded the Boston Marathon Bombing. *Id. at ¶17.* In particular, on or about May 8, 2013 (more than 3 weeks after the bombing), and at repeated and diverse times thereafter, Beck stated that Alharbi was the "money man" who had funded the Boston Marathon Bombing. *Id. at ¶18.* These statements were false and were made with actual malice. *Id. at ¶¶25, 29.*

---

[2] *See also* DEF-0089 (The Boston Globe, April 16, 2013 ("He has been checked out," said a law enforcement official briefed on the investigation. "He is not involved. He is just a victim.").

**ARGUMENT**

**I.    Mr. Alharbi Is A Private Figure, Not A Limited-Purpose Or Involuntary Public Figure.**

Defendants contend that, for the purposes of the Court's defamation analysis, Plaintiff is either a "limited-purpose" or an "involuntary" public figure.  The Defendants rely on the fact that Alharbi was (i) investigated and (ii) subsequently told three small on-line publications that he was not involved in the bombing.[3]   Put simply: Alharbi has not "thrust" himself to the "forefront" of the Boston Marathon Bombing.  He is a private individual.

**A.    Alharbi Did Not Thrust Himself To The Forefront Of The Boston Marathon Bombing.**

In *Lluberes v. Uncommon Prods., LLC*, the First Circuit highlighted the key question in determining if an individual is a limited-purpose public figure:

> Once a controversy is isolated, the critical question then becomes whether the plaintiff has attempted to "influence the resolution" of that controversy. *See, e.g.*, *Wolston*, 443 U.S. at 168 (public figures engage "the attention of the public in an attempt to influence the resolution of the issues involved" or use a newsworthy event "as a fulcrum to create public discussion"); *Firestone*, 424 U.S. at 453 (**public figures "thrust themselves to the forefront of any particular controversy** in order to influence the resolution of the issues involved in it"); *Pendleton*, 156 F.3d at 69 (holding that the defamation plaintiff was a public figure because he "voluntarily injected himself" into the controversy); *Bruno & Stillman*, 633 F.2d at 591 (requiring a "thrusting into the vortex"). If so, the plaintiff is a public figure and bears the heavy, and often insurmountable, burden of proving actual malice.

663 F.3d 6, 14 (1st Cir. 2011) (emphasis added).   To decide whether an individual has "thrust" himself into a particular public controversy, courts undertake a two-step "particularized determination":  first, they inquire whether the controversy "preceded the alleged defamation,"

---

[3] Defendants bear the burden in establishing "sufficient evidence to support a factual conclusion that [plaintiff] is a public figure." *Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 562 (1st Cir. 1997) (declining to make the particularized factual determination on the facts presented).   "[A] finding of public figure status necessitates a detailed fact-sensitive determination." *Id.* (citing *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 589 (1st Cir. 1980)); *see also Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 204 (1st Cir. 2006) ("there are cases in which 'it may not be possible to resolve the [public-figure] issue until trial'").

and, if so, they next examine "the nature and extent" of the individual's "participation in the particular controversy giving rise to the defamation." *Flotech, Inc. v. E.I. Du Pont de Nemours Co.*, 627 F. Supp. 358, 366 (D. Mass. 1985), *aff'd* 814 F.2d 775 (1st Cir. 1987) (quoting *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 591 (1st Cir. 1980).

Defendants state that (1) the investigation of the Plaintiff, combined with (2) his subsequent denials of any involvement in the bombing, support their claim that Mr. Alharbi has intentionally and voluntarily "thrust [himself] to the forefront" of the Boston Marathon bombings.  Courts have been very clear that an individual does not become a public figure simply because he is investigated in connection with a crime and then publicly declares that he is innocent of those crimes. *See, e.g.*, *Time, Inc. v. Firestone*, 424 U.S. 448, 455 (1976) ("Nor do we think the fact that respondent may have held a few press conferences during the divorce proceedings in an attempt to satisfy inquiring reporters converts her into a 'public figure.'"); *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 19 (1st Cir. 2011) ("an individual should not risk being branded with an unfavorable status determination merely because he defends himself publicly against accusations, especially those of a heinous character"); *Levine v. CMP Publications, Inc.*, 738 F.2d 660, 672 (5th Cir. 1984) (applying Texas law and quoting with approval *Firestone*'s conclusion that holding "press conferences during the ... proceedings in an attempt to satisfy inquiring reporters" did not convert one into a public figure); *Jones v. Taibbi*, 400 Mass. 786, 798-799, 512 N.E.2d 260, 268 (1987) ("Even if we assume that the serial murders which lead to the plaintiff's arrest constitute a 'public controversy,' '[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention.'") (internal citations omitted); *accord Conroy v. Fall River Herald News Co.*, 306 Mass. 488, 28 N.E.2d 729, 730 (1940) ("One

attacked by a slander or libel has a right to defend himself").  Accordingly, the investigation of Alharbi for a crime, and his subsequent public denial of any involvement with such crime, is not sufficient to find that he voluntarily "thrust" himself to the forefront ("the vortex") of a controversy.

> **B.  Defendants' Memorandum Reasserts Patently False Allegations As Undisputed Facts.**

With the apparent recognition that inadmissible hearsay from unauthenticated news reports is not enough, Defendants incredibly _re_assert—in the motion to dismiss itself—the spurious and patently false allegation that Plaintiff voluntarily thrust himself into the public controversy by "behaving suspiciously" at the bombing site.  They assert that Mr. Alharbi is responsible for the attention he received, and that he purposefully "_caused_" his alleged detention and investigation.  At page ten (10) of their Memorandum, citing to a report prepared by a Congressman,[4] Defendants write:

> Plaintiff embarked on a course of conduct that was reasonably likely to result in public attention and comment on his background, activities, and immigration status.  By behaving suspiciously at the Marathon finishing line when the bombs detonated (Ex. 2, DEF 0046), thereby causing his detention and a background check by law enforcement, Plaintiff became the focal point of an ongoing exchange between executive and legislative branch officials at the highest levels of the United States government regarding the efficacy of its counterterrorism program.

There are many things wrong with this demonstrably false allegation.  First, it is simply untrue that the Plaintiff was detained because he was acting suspiciously at the Marathon finishing line.  He was never detained by law enforcement.  He never behaved suspiciously.  He did not "cause" his "detention" and "background check."  Plaintiff was injured by the blast, sought out a police officer to locate medical attention, was taken to a hospital, and was later questioned at the

---

[4] Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." _Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co._, 267 F.3d 30, 33 (1st Cir.2001).

hospital by law enforcement officials to determine if he had any involvement (as were others who were injured that day).

The Defendants present this debunked and unsubstantiated allegation as an undisputed fact which the Court can take judicial notice of.  This is especially odd, seeing as this statement is called into question by other newspaper articles which Defendants attach to their motion and rely upon.  In any case, as the blatant falsity of this statement demonstrates, the Court cannot take judicial notice of a fact simply because it appears in a government document.  In footnote 1, at page 3 of their Memorandum, Defendants contend that the Court can take judicial notice of this "behaving suspiciously" fact because it appears in an official United States government document.  One problem with this contention is that the referenced report cites only to newspaper articles to substantiate this claim.  *See DEF-0033* (acknowledging that the report "utilizes media reporting").  A government report is not a magical document which transforms unsubstantiated hearsay into an undisputed fact.[5]

The root of the problem is that the "judicial notice" cases to which the Defendants cite do not say what the Defendants want them to say.  In *United States v. Bello*, the court, during trial, took judicial notice of certain maps and other documents that were submitted by the government, and which were—importantly—not questioned by the defense.  194 F.3d 18, 23-24 (1st Cir. 1999).  Likewise, in *Torrens v. Lockheed Martin Servs. Grp., Inc.*, 396 F.3d 468, 473 (1st Cir. 2005), also cited by the Defendants, the Court did not take judicial notice of the government records "for the truth of anything asserted in it," but simply took judicial notice that the documents actually existed.  It is preposterous—especially on a motion to dismiss—to attach

---

[5] The report is a thirty-seven (37) page investigative report prepared by the Chairman of the House Committee on Homeland Security.  To the extent it is at all germane or otherwise contains relevant, admissible evidence, it serves only to undermine Defendants' claim that Plaintiff was a central figure in the Marathon bombings.  Plaintiff's name is not used once, and there are but three (3) sentences devoted to the questioning of a Saudi national "shortly after the attack."

unauthenticated documents, which contain known and provable falsehoods, and then assert that these documents can serve as an appropriate basis for the Court to dispose of the case.  In short, on this Rule 12(b)(6) motion, there is simply no evidence to support the Defendants' claim that Mr. Alharbi "embarked on a course of conduct" (*i.e.*, behaving suspiciously at the bombing site) which invited public attention to his "background, activities, and immigration status."

By equal measure, Defendants engage in what is called "boot-strapping."  *See, e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("[T]hose charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). Pointing to a letter requesting information about an individual scheduled for immediate deportation (according to "media reports")—prepared again by certain Congressmen—the Defendants claim that Alharbi "became the focal point of an ongoing exchange between executive and legislative officials at the highest levels of the United States government regarding the efficacy of its counterterrorism program."  *Defendants' Memorandum at p. 11.*

As the Defendants must know, it is patently untrue that the Plaintiff was ever scheduled, or even considered, to be deported from the United States.  There were media reports of another Saudi Arabian citizen who was to be deported.  Perhaps the letter is referring to that individual. It is impossible to know, as the letter does not identify any individual by name.  Yet this does not deter the Defendants from presenting it as a judicially noticeable fact that it was Alharbi who was being discussed.  Further, to the extent there was any confusion as to whether or not it was the Plaintiff who was to be deported (and thus the subject of this irrelevant letter), such confusion was sown by the defamatory reporting of Mr. Beck, who accused the Obama administration of a massive conspiracy to protect and cover-up the "money man" behind the attacks.  It cannot be said that Alharbi voluntarily thrust himself to the forefront of the

9

controversy simply because Beck reported that the Plaintiff was to be deported and a Congressman thereafter writes a letter requesting information based on that report.  In other words, Beck cannot *sua sponte* make Alharbi into a public figure for him to defame.

###### C.     Alharbi Is Not One Of The "Exceedingly Rare" Instances Of An "Involuntary Public Figure."

In *Gertz v. Robert Welch, Inc.*, the Supreme Court wrote: "it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare."  418 U.S. 323, 345 (1974).  Relying principally on *Atlanta Journal-Constitution v. Jewell*, 555 S.E.2d 175, 183 (Ga. Ct. App. 2001) (examining motion for partial summary judgment and applying Georgia law), the Defendants contend that Plaintiff is one of these "exceedingly rare" involuntary public figures, because he was questioned by law enforcement officials "after 'reportedly behaving suspiciously near the site of the explosions."  *Defendants' Memorandum at p. 13.*

Setting aside, for now, the impropriety of Defendants' reliance on unauthenticated hearsay on a Rule 12(b)(6) motion to dismiss, the facts at issue in the *Jewell* case—a Georgia case which has never been relied upon by any federal appellate court or any Massachusetts or Texas state or federal court—are completely different from the facts at issue here.  In *Jewell*, the court determined that the plaintiff played a central role in the bombing at the 2000 Summer Olympics in Atlanta, and was thus determined to be a limited-purpose public figure (and, at the very least, an involuntary public figure), because he:

1)      was a security guard on duty at the time of the bombing,

2)      was the ***sole*** individual who discovered the bomb,

3)      was involved in the evacuation of the public, saved lives, and characterized in media reports as a "hero,"

4)      despite being told by his employer that he was under no obligation to give interviews, voluntarily granted one photo shoot and ten interviews with local, national, and international media,

5)      gave a live television interview with a CNN reporter, which was rebroadcast several times, including on *The Larry King Show*, wherein he discussed his six years of law enforcement training,

6)      gave another interview with CNN, where he indicated that he hoped his efforts would help him with his career in law enforcement,

7)      in a *USA Today* interview, extensively discussed his involvement and personal actions after he found the package,

8)      gave an interview to the *Atlanta Journal-Constitution* discussing his and other security personnel's efforts,

9)      appeared on a local television interview, which was replayed several times,

10)     gave a telephone interview on CNN's *Talk Back Live* program describing his actions in discovering the package, and

11)     was interviewed by anchorwoman Katie Couric on NBC's *The Today Show*, where he again explained his role in discovering the package and his training as a security guard.

251 Ga. App. at 814-815, 555 S.E.2d at 182.

The Plaintiff in this case was not involved in the bombing as a security guard, nor was he singularly responsible for discovery of the bombs at the Boston Marathon and declared a "hero." Alharbi was simply an innocent bystander, injured like many others in the blast. Alharbi likewise did not engage the media like the plaintiff in *Jewell*. He has not given any television interviews, let alone television interviews with large, international media outlets like CNN or NBC. He was never interviewed by Katie Couric on *The Today Show*, claiming responsibility for unique actions associated with the bombing. At most, Defendants have only offered purported evidence (the documents relied upon are unauthenticated hearsay) that the Plaintiff consented to three (3) interviews with small, on-line publications (*Saudi Gazette*, *Arab News*,

11

and *The Islamic Monthly*), wherein he denied involvement in the bombings and stated that he intended to return to his studies.[6]   Quite simply, these limited statements to three small on-line publications do not justify finding Alharbi to be one of the "exceedingly rare" instances of an involuntary public figure.   *See Pendleton v. City of Haverhill*, 156 F.3d 57, 68 (1st Cir. 1998) (describing as a "canard" the argument that an individual becomes a public figure "merely by defending oneself publicly against accusations," and finding that "an individual's involvement in a criminal proceeding—even one that attracts substantial notoriety—is not enough, in itself, to ingeminate public figure status").

Defendants also rely on *Hatfill v. New York Times Co.*, 488 F. Supp. 2d 522 (E.D. Va. 2007) (a summary judgment case, applying Virginia law, which has never been cited by any other court), stating that the plaintiff in that case was found to be an involuntary public figure because he was "named a 'person of interest' in the investigation of the 2001 anthrax mailings." *Defendants' Memorandum at p. 13*.  This is a truncated and misleading characterization of the facts in *Hatfill*.

There, the plaintiff was found to be a limited purpose public figure, an involuntary public figure, and a public official.   In finding that, at a minimum, the plaintiff was an involuntary public figure, the court wrote that:

> Plaintiff should have foreseen that by providing interviews, delivering lectures, and publishing articles on the subject of the bioterrorism threat, a public interest in him would arise. Because Plaintiff engaged in a course of conduct that was likely to invite attention and scrutiny, Plaintiff cannot now claim that he was a private figure who was dragged into this controversy unwillingly.

---

[6] Defendants claim that "Plaintiff himself actively courted the press." *Defendants' Memorandum at p. 10*.  This claim is wholly unsubstantiated.  Defendants have not provided any evidence which would support the statement that Alharbi "actively courted" the press.  Defendants' attempt to characterize one of the interviews as "lengthy" is equally misguided.  This purported "lengthy" interview consisted of twenty-five (25) questions over a span of approximately ten (10) minutes.

*Hatfill*, 488 F. Supp. 2d at 530.  The plaintiff "was a vocal critic of the government's level of preparedness for a bioterrorist attack," and "[h]is lectures, writings, participation on panels, and interviews, as well as his own resume, led many to consider [him] an expert in the field of biological weaponry."  *Id.* at 529-530.  Indeed, the court found the plaintiff to be "a public official both in fact and in appearance," because he performed government functions as a contractor with the government, participated in a government-funded program dealing with biological warfare, made recommendations to highly-ranked public government officials on biological warfare issues, and developed training programs for the CIA, DIA, State Department, and elite branches of the armed forces.  *Id.* at 528.  At the time of the alleged defamation, he received federal funds to work on national defense programs and described himself as being of "national importance."  *Id.*  Thus, the facts in *Hatfill* bear no resemblance to the facts at issue here.

If anything, the facts here bear closer resemblance to those considered in *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1557-59 (4th Cir. 1994).  In *Foretich*, the court concluded that plaintiff grandparents, who had been accused of abusing their granddaughter, were not involuntary public figures where they had granted several newspaper and magazine interviews, attended at least three press conferences, and appeared on at least two television shows to defend themselves against the charges.  The First Circuit indicated that it agreed with *Foretich*, in the sense that "an individual should not risk being branded with an unfavorable status determination merely because he defends himself publicly against accusations, especially those of a heinous character."  663 F.3d at 19.  At most, the facts demonstrate only that Alharbi was briefly investigated by officials, immediately cleared of any wrong-doing, and then stated

13

publicly that he was not involved in the bombing simply because he was investigated.  This denial of involvement does not make him a public figure.

## II.    Actual Malice Can Be Inferred From The Allegations Contained In The Complaint.

As currently pleaded, consistent with the requirement that malice may be alleged generally under Rule 9(b) of the Federal Rules of Civil Procedure, the allegations set forth in the Complaint permit the court to draw the reasonable inference that the Defendants are liable for actual malice.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Because direct evidence of actual malice is rare, it may be proved through inference, and circumstantial evidence. Recklessness amounting to actual malice may be found where a publisher fabricates an account, makes inherently improbable allegations, relies on a source where there is an obvious reason to doubt its veracity, or deliberately ignores evidence that calls into question his published statements."  *Levesque v. Doocy*, 560 F.3d 82, 90-91 (1st Cir. 2009) (internal citations omitted); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (to satisfy *Twombly* and *Iqbal*, plaintiff need only "lay out enough facts from which malice might reasonably be inferred"); *Fox Entm't Grp., Inc. v. Abdel-Hafiz*, 240 S.W.3d 524, 533 (Tex. App. 2007) ("Actual malice focuses on the defendant's state of mind, particularly his attitude toward the truth of what he reported, which a plaintiff can prove through objective evidence about the publication's circumstances and the defendant's conduct at the time of publication."); *Petition of Retailers Commercial Agency, Inc.*, 342 Mass. 515, 521, 174 N.E.2d 376, 380 (1961) (holding that "if a defendant makes a report which he asserts to be true when he has no reasonable grounds or probable cause for so doing, it could be found that he has not acted in good faith" and that "[i]t has long been recognized that an absence of good faith may tend to prove ill will and thus actual malice"); *Wormwood v. Lee*, 226 Mass. 339, 341, 115 N.E. 494 (1917) ("[i]n an

action for slander, upon proof that words in themselves actionable have been spoken, there is a presumption of malice as an inference of law").

By April 16, 2013—the day after the Marathon Bombing—law enforcement officials had publicly declared that the Plaintiff was not a suspect or a person of interest, and was in fact a victim.  *See* Complaint, ¶1 ("The responsible officials quickly concluded that Mr. Alharbi, other than being injured in the attacks, had no involvement in the attacks."); *see also* DEF-0089 (The Boston Globe, April 16, 2013 ("He has been checked out," said a law enforcement official briefed on the investigation. "He is not involved. He is just a victim.").  Despite this, in the following weeks—well into May 2013—the Defendants continuously and recklessly stated that Mr. Alharbi was responsible for the bombings and had, at the very least, funded the attacks.  *See* Complaint at ¶¶1, 15-18.  From these facts—which are explicitly alleged in the Complaint—the Court can draw the reasonable inference that the Defendants have not acted in good faith and thus with "actual malice."  Accordingly, for this reason alone, the Defendants motion to dismiss must be denied.

III.    **The Court's Analysis Must Account For The Legitimate State Interest Underlying The Law Of Libel: Compensating Individuals For Harm Inflicted By Defamatory Falsehoods.**

At the outset of their brief (*Section 1.A., pages 4 and 5*), Defendants make the general argument—not specific to the allegations contained in the Complaint in this case—that disposing of a defamation case on a motion to dismiss is "recognized as having particular value" in promoting First Amendment interests.  Citing, *inter alia*, to *Lyons v. Globe Newspaper Co.*, 612 N.E. 2d 1158, 415 Mass. 258, 268 (1993), Defendants claim that "the 'independent protections' of Article 16 of the Declaration of Rights and Massachusetts common law similarly mandate the summary dismissal of meritless libel claims."  Plaintiff does not dispute that this Court should

dismiss a meritless claim for defamation.  It is important, however, when citing to precedent, to be specific about what qualifies as a "meritless" claim.  In *Lyons*, on review of summary judgment (not a motion to dismiss),[7] the Supreme Judicial Court concluded that the statements at issue were merely an expression of opinion that were based on disclosed and nondefamatory facts.  *Id*. at 266.  Here, Defendants do not <u>once</u> claim in their Motion that their statements—that Plaintiff was responsible for the criminal bombing—are expressions of opinion based on disclosed and nondefamatory facts.

Plaintiff is not trying to "damper" Mr. Beck's "freedom of expression."  *See Defendants' Memorandum at p. 5*.  Mr. Alharbi is only seeking recourse for the harm he has suffered from Beck's libelous statements.  Without any substantiation, and contrary to the explicit statements of the law enforcement officials involved in the investigation of the crime, the Defendants repeatedly and recklessly claimed that Alharbi was responsible for the Boston Marathon Bombing.  This is not speech protected by the First Amendment.  This is defamation.  *See, e.g.*, *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 773 (1986) ("'The need to avoid self-censorship by the news media is ..., not the only societal value at issue ... [or] this Court would have embraced long ago the view that publishers and broadcasters enjoy an unconditional and indefeasible immunity from liability for defamation.' Any analysis must also take into account the 'legitimate state interest underlying the law of libel [in] the compensation of individuals for the harm inflicted on them by defamatory falsehood.'") (internal citations omitted).

---

[7] Many of the other cases cited in Defendants' general "First Amendment interests" section are not cases which addressed a motion to dismiss.  *See Appleby v. Daily Hampshire Gazette*, 395 Mass. 32, 37, 478 N.E.2d 721 (1985) (summary judgment, not motion to dismiss); *Dulgarian v. Stone*, 420 Mass. 843, 846, 652 N.E.2d 603 (1995) (summary judgment, not motion to dismiss).  Indeed, the appeal to *Eyal v. Helen Broad. Corp*., 411 Mass. 426, 432 n.7, 583 N.E.2d 228 (1991) in support of the claim that there is "value" to dismissing a defamation claim is undermined by the court's holding.  There, the Supreme Judicial Court <u>*reversed*</u> the lower court's allowance of motion to dismiss that was asserted by the individual, non-corporate plaintiff.

**IV.**     <u>**As Necessary, Plaintiff Should be Granted Leave to Amend**</u>.

When a motion to amend is entered before formal entry of judgment, the district court should evaluate the motion under the liberal standard of Rule 15(a). *Torres–Alamo v. Puerto Rico*, 502 F.3d 20, 25–26 (1st Cir.2007) (*citing Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir.2006)). Under this standard, "[a]mendments may be permitted prejudgment, even after a dismissal for failure to state a claim, and leave to amend is 'freely given when justice so requires.' *Id.*

<u>**CONCLUSION**</u>

The Plaintiff Abdulrahman Alharbi respectfully requests that the Court deny Defendants Rule 12(b)(6) motion to dismiss.

ABDULRAHMAN ALHARBI

By his attorneys,

/s/ Peter J. Haley
Peter J. Haley (BBO # 543858)
Patrick T. Uiterwyk (BBO # 665836)
NELSON MULLINS RILEY & SCARBOROUGH LLP
One Post Office Square – 30th Floor
Boston, Massachusetts 02109-2127
Telephone:     (617) 573-4700
Facsimile:     (617) 573-4710
Email: *peter.haley@nelsonmullins.com*
Email: *patrick.uiterwyk@nelsonmullins.com*

Dated: June 20, 2014

## <u>CERTIFICATE OF SERVICE</u>

I, Peter J. Haley, hereby certify that on this 20th day of June, 2014 the *Memorandum In Support Of Plaintiff's Opposition To Defendants' Motion To Dismiss The Complaint Pursuant To Fed. R. Civ. P. 12(B)(6)* filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/Peter J. Haley*

Peter J. Haley