UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABDULRAHMAN ALHARBI,<br><br>              Plaintiff,<br><br>− v. −<br><br>GLENN BECK; THE BLAZE, INC.;<br>MERCURY RADIO ARTS, INC.; AND<br>PREMIERE RADIO NETWORKS, INC.<br><br>              Defendants. | CIVIL ACTION NO.<br>1:14-cv-11550-PBS<br><br>Leave to File Granted on<br>June 26, 2014 |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

GREENBERG TRAURIG, LLP

Michael J. Grygiel (Admitted *pro hac vice*)
Mark A. Berthiaume (BBO # 041715)
Zachary C. Kleinsasser (BBO # 664291)
One International Place, 20th Floor
Boston, Massachusetts 02110
Tel.: 617-310-6000
Fax: 617-310-6001
E-mail: grygielm@gtlaw.com
            berthiaumem@gtlaw.com
            kleinsasserz@gtlaw.com

*Attorneys for Defendants Glenn Beck;
TheBlaze Inc.; Mercury Radio Arts, Inc.;
and Premiere Radio Networks, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

I.      THE OPPOSITION CONFIRMS THAT PLAINTIFF IS A PUBLIC FIGURE ................1

      A.      Plaintiff Is A Limited Purpose Public Figure. ..........................................................1

      B.      Plaintiff Is Also An Involuntary Public Figure. ........................................................5

II.     THE OPPOSITION CONFIRMS THAT THE COMPLAINT ALLEGES NO
      FACTS THAT COULD PLAUSIBLY ESTABLISH "ACTUAL MALICE" ...................6

      A.      None of Plaintiff's Allegations Plausibly Establish that the Broadcast
             Statements Complained of Were Published With Actual Malice. ...........................6

      B.      The First Circuit's Decisions Require Dismissal of the Complaint. ........................8

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*Biro v. Condé Nast*, 963 F.Supp.2d 255 (S.D.N.Y. 2013) ...................................................... 8 n.7

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980) ...................... 3 n.5

*Dameron v. Washington Magazine, Inc.*, 779 F.2d 736 (D.C. Cir. 1985) .................................... 5

*Dilworth v. Dudley*, 75 F.3d 307 (7th Cir. 1996) ......................................................................... 4

*Flotech, Inc. v. E. I. DuPont de Nemours & Co.*, 814 F.2d 775 (1st Cir. 1987) ..................... 9 n.9

*Foretich v. Capital Cities/ABC Inc.*, 37 F.3d 1541 (4th Cir. 1994) ................................. 3 n.5, 5, 6

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ................................................................. 1-2, 5

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) ....................... 8, 9 n.9

*Hatfill v. New York Times Co.*, 532 F.3d 312 (4th Cir.) ............................................................ 4, 5

*Hatfill v. New York Times Co.*, 488 F.Supp.2d 522 (E.D. Va. 2007) ........................................... 5

*Kosilek v. Spencer*, 889 F. Supp. 2d 190 (D. Mass. 2012) ...................................................... 3 n.3

*Levesque v. Doocy*, 560 F.3d 821 (1st Cir. 2009) ................................................................ 6-7, 100

*Lluberes v. Uncommon Productions, LLC*, 663 F.3d 6 (1st Cir. 2011) .................................. 2 n.2, 6

*Lohrenz v. Donnelly*, 223 F.Supp.2d 25 (D.D.C. 2002) ................................................................ 7

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .................................................................. 6

*Nicholson v. Promotors on Listings*, 159 F.R.D. 343 (D. Mass. 1994) ................................ *passim*

*Parisi v. Sinclair*, 845 F.Supp.2d 215 (D.D.C. 2012) .................................................................. 10

*Parks v. Town of Huntington*, 251 F.Supp.2d 1143 (E.D.N.Y. 2003) ........................................ 3-4

*Rutherford v. Katonah-Lewisboro School District*,
   670 F.Supp.2d 230 (S.D.N.Y. 2009) ........................................................................................ 7

*Schatz v. Republican State Leadership Committee*,
   669 F.3d 50 (1st Cir. 2012) .............................................................................................. *passim*

*Shay v. Walters*, 702 F.3d 76 (1st Cir. 2012) ..................................................................... 8, 8 n.7

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ......................................................................... 9 n.9

*Time, Inc. v. Firestone*, 424 U.S. 448 (1976)..............................................................................3 n.5

*Time, Inc. v. Pape*, 401 U.S. 279 (1971).........................................................................................7

*Torrens v. Lockheed Martin Services Group, Inc.*,
   396 F.3d 468 (1st Cir. 2005)................................................................................................3 n.3

*Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431(5th Cir. 1987) ..............................2, 3 n.4

*Wolston v. Reader's Digest Ass'n*, 443 U.S. 157 (1979).................................................................3

**<u>State Cases</u>**

*Atlanta Journal-Constitution v. Jewell*, 555 S.E.2d 175 (Ga. Ct. App. 2001).................................5

*Cottrell v. NCAA*, 975 So. 2d 306 (Ala. 2007) ................................................................................6

**<u>Other Authorities</u>**

Robert D. Sack, *SACK ON DEFAMATION*, § 5:3:11 (4th ed. 2011)........................................6 n.6

**PRELIMINARY STATEMENT**

Plaintiff's opposing brief[1] offers two insupportable arguments in attempting to stave off dismissal of his Complaint. First, it denies that Plaintiff is a public figure under the First Amendment. This claim is a peculiar one coming from someone who occupied the crosshairs of an intensive public controversy stemming from the investigation into the 2013 Boston Marathon bombing after he was identified by law enforcement as a suspect. Further, Plaintiff injected himself into the public debate by availing himself of the platform provided by the media to present his version of events. Plaintiff qualifies as both a limited purpose and involuntary public figure.

Second, Plaintiff argues that Defendants' continuation of the broadcasts at issue after he was "publicly declared" not to be a suspect demonstrates publication with actual malice. (Pl. Br., 15) As recently affirmed by the First Circuit, Plaintiff is obligated to allege facts in his Complaint sufficient to raise a plausible inference that the factual content of the broadcasts he complains of intentionally or recklessly departed from the truth. *Schatz v. Repub. State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012). Despite having more than a year to gather facts supporting his defamation claims, Plaintiff has still failed to proffer *any* facts − from *any* source − that support his conclusory allegation of actual malice. As the opposition makes clear, no facts alleged in the Complaint even remotely suggest such a possibility. The bare allegations in the Complaint fail to state a viable defamation claim, and it should be dismissed with prejudice.

**I.  THE OPPOSITION CONFIRMS THAT PLAINTIFF IS A PUBLIC FIGURE**

    **A.  Plaintiff Is A Limited Purpose Public Figure.**

Try as he might, Plaintiff cannot extricate himself from limited purpose public figure status as defined in *Gertz v. Robert Welch, Inc.*: "an individual [who] voluntarily injects himself

---

[1] The June 20, 2014, Memorandum in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Opposition") is cited herein by page as "(Pl. Br., ___)."

1

or is drawn into a particular controversy . . . thereby becomes a public figure for a limited range of issues." 418 U.S. 323, 351 (1974). For purposes of the controversy surrounding the investigation into the Boston Marathon bombing − which paralyzed the community and riveted the nation − as well as its direct implications for homeland security, Plaintiff is a public figure.

In *Nicholson v. Promotors on Listings*, this Court applied a three-part test that demonstrates Plaintiff is a limited purpose public figure in this instance. 159 F.R.D. 343, 344 (D. Mass. 1994) (Saris, J.). First, Plaintiff cannot reasonably dispute that, at the time of the broadcasts at issue, there was an intense public controversy[2] over who was responsible for the bombing attacks, the conduct of the ensuing law enforcement investigation, and the effectiveness of the U.S. government's counterterrorism efforts. These issues had "foreseeable and substantial ramifications for nonparticipants" are "inevitably of concern to the public." *Id.* at 344, 352. In this respect, this case is similar to *Trotter v. Jack Anderson Enters., Inc.*, in which the Fifth Circuit found a public controversy surrounding industrial labor violence because it "captured the attention of a diverse and broadly-based audience, including the media, political leaders, human-rights organizations, labor unions, and Coca-Cola shareholders." 818 F.2d 431, 434 (5th Cir. 1987). Here, too, the overlapping controversies emanating from the bombing tragedy also captured the attention of a broad audience, including the national and international media (Exs. 3, 6 & 7), U.S. government officials (Exs. 1 & 2),[3] and citizens in Boston and across the country.

---

[2] Plaintiff alleges that Defendants created a public controversy by incorrectly reporting that he was scheduled to be deported. (Pl. Br., 9-10) This claim distorts the anti-bootstrapping principle informing the public figure determination, which prevents defendants from relying on their own publication "to manufacture a public controversy involving the plaintiff" and thereby benefit from the elevated constitutional fault standard. *Lluberes v. Uncommon Productions, LLC*, 663 F.3d 6, 18 (1st Cir. 2011). Accordingly, as a safeguard to libel plaintiffs, "the controversy must pre-exist the alleged defamation." *Nicholson*, 159 F.R.D. at 352 n.3. There can be no doubt here that, at the time of Defendants' broadcasts, the controversy involving Plaintiff "was both preexisting and ongoing." *Id.* at 345. Clearly, "no bootstrapping occurred from which the [Defendants] could have benefitted [*sic*] in this lawsuit." *Lluberes*, 663 F.3d at 18.

[3] Plaintiff takes issue with Defendants' citation to a March 2014 report prepared by the United States House of Representatives Committee on Homeland Security (the "Committee") which reports that Plaintiff was

Second, far from having a "trivial or tangential role" (*Nicholson*, 159 F.R.D. at 344) in these preexisting public controversies, Plaintiff occupied their epicenter as the initial suspect identified by law enforcement authorities in connection with the bombings, a position he exploited by granting several interviews to the media[4] − including a television appearance (*see* Ex. 7) that he categorically denied making (Pl. Br., 11) − beginning in the days immediately after the attacks and continuing at least through May 21, 2013. (Exs. 3, 6 & 7) He used a newsworthy event "as a fulcrum to create public discussion." *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 168 (1979). By making statements to the media conveying his views, Plaintiff sought to influence the debate over the U.S. government's anti-terrorism methods by questioning whether he was justifiably interrogated or ethnically profiled.[5] *Parks v. Town of Huntington*, 251 F.Supp.2d 1143, 1168

---

"behaving suspiciously near the site of the explosions." (Pl. Br., 7-9) Plaintiff contends that this official government document is an improper subject of judicial notice. *Id.* This argument lacks any merit whatsoever. Defendants are not offering the Homeland Security report for the truth of what is asserted therein (*i.e.*, that Plaintiff was, in fact, "behaving suspiciously"). Rather, Defendants are simply asking the Court to take judicial notice of the fact that *the United States government was reporting* that Plaintiff was alleged to have been "behaving suspiciously." It is well established that courts may take judicial notice of the "existence and content" of such materials "even if they are not in the record before it, particularly when . . . they are not being considered for the truth of the matters reported." *Kosilek v. Spencer*, 889 F.Supp.2d 190, 215 n.6 (D. Mass. 2012); *see also Torrens v. Lockheed Martin Servs. Grp., Inc.*, 396 F.3d 468, 473 (1st Cir. 2005).

[4] Plaintiff's efforts to downplay his engagements with the media are nowhere more obvious than in his statement that he "consented to three (3) interviews with small, on-line publications." (Pl. Br., 11-12) This is not only incorrect − beginning the day after the bombings occurred, Plaintiff spoke with at least five (5) different news organizations on various occasions − but ignores that the First Amendment does not impose a public figure litmus test based on the number, frequency, or prominence (Pl. Br., 11) of a libel plaintiff's media appearances. To the contrary, courts have found public figure status even though the libel plaintiff never "actively 'engage[d] the public's attention' and his name did not appear very frequently in the press." *Trotter*, 818 F.2d at 435-36; *see also Nicholson*, 159 F.R.D. at 344-45, 352 (held, limited purpose public status established with no press appearances by plaintiff).

[5] Defendants do not quarrel with the proposition, repeated several times in the Opposition, that an individual who publicly defends against accusations of criminality or other misconduct does not, absent more, relinquish private figure status. (Pl. Br., 1, 6, 7) This principle underlies *Time, Inc. v. Firestone*, 424 U.S. 448 (1976) and *Foretich v. Capital Cities/ABC Inc.*, 37 F.3d 1541 (4th Cir. 1994), cases relied on by Plaintiff which are readily distinguishable. First, the magnitude and legitimacy of the public controversy surrounding the Boston marathon bombings transcend the "cause célèbre" nature of the private marital proceeding involving a wealthy socialite in *Firestone*. 424 U.S. at 454; *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 590 (1st Cir. 1980) ("The *ipse dixit* in *Firestone* that marital difficulties even of the wealthy were not matters of public controversy is understandable as an instinctive reaction that the public can have no interest other than satisfaction of its curiosity in the outcome of a divorce proceeding."). Second, as the motion record indicates, Plaintiff's statements to the media went beyond a response to Defendant's broadcasts. Rather, Plaintiff questioned whether his identification as a suspect and interrogation by the FBI were based on ethnic profiling, and

3

(E.D.N.Y. 2003) (plaintiff is a public figure because he made "voluntary and repeated contact with the media" to present "his side of the story"). Through his own actions, Plaintiff "voluntarily entered the public arena" (*Nicholson*, 159 F.R.D. at 344) and consented to the "rough competition of the marketplace." *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). Plaintiff has thus proven that he had access to "channels of effective communication," a hallmark of public figure status. *Nicholson*, 159 F.R.D. at 345. In short, through his multiple media appearances, Plaintiff "voluntarily thrust himself into the debate. He cannot remove himself now to assume a favorable litigation posture." *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 324 (4th Cir. 2008).

<u>Third</u>, the challenged broadcasts were unquestionably relevant to Plaintiff's participation in the controversies, as alleged in the Complaint. (Compl. ¶¶ 15-18)

Plaintiff's involvement in the controversies surrounding the Marathon bombing is much more extensive than the plaintiff's actions in *Nicholson*, who kept his efforts at managing the financial affairs of a municipal auditorium facility mainly private. Even though the *Nicholson* plaintiff did not grant any media interviews and the record was unclear as to whether he had greater media access because of his position, 159 F.R.D.at 352, this Court nevertheless held that he was a limited purpose public figure "as that term is explained by the Supreme Court in *Gertz*, and by leading interpretations of *Gertz* in the other circuits." *Id.* at 344.

If the Supreme Court's holding in *Gertz* means anything, it must mean that Plaintiff is a public figure "with respect to the events that form the subject of this controversy." *Nicholson*, 159 F.R.D. at 345.

---

castigated the media for its news coverage. (Ex. 3, DEF 0099-0105) Notably in this regard − and as Plaintiff himself emphasizes − "law enforcement officials had publicly declared" (Pl. Br., 15) the day after the Marathon bombing that he was no longer a suspect, effectively eliminating his need to defend himself in the press because it had already been done for him. (Ex. 6, DEF 0161) ("[Plaintiff] also thanked the U.S. authorities who refuted media allegations about his being suspected"). *See Nicholson*, 159 F.R.D. at 344 (rejecting defamation plaintiff's argument that "he did not thrust himself into the controversy 'but was forced into it' by the media").

4

## B. Plaintiff Is Also An Involuntary Public Figure.

Plaintiff also qualifies as an involuntary public figure. *Gertz*, 418 U.S. at 345. Like air traffic controller Merle Dameron, former government scientist Steven Hatfill, and Olympic Park security guard Richard Jewell, Plaintiff's "role in a major public occurrence resulted in his becoming an involuntary, limited-purpose public figure." *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 737 (D.C. Cir. 1985); *Hatfill v. N.Y. Times Co.*, 488 F.Supp.2d 522, 530 (E.D. Va. 2007); *Atlanta Journal-Constitution v. Jewell*, 555 S.E.2d 175, 186 (Ga. Ct. App. 2001). Like the plaintiffs in the above cases, who became embroiled in public controversy "through no desire of [their] own" (*Dameron*, 779 F.2d at 742), Plaintiff was publicly identified as a suspect, interrogated by the FBI while in the hospital, and had his apartment searched because the explosions happened to occur when he was at the Marathon finishing line. As a direct result, and "through no purposeful action of his own" (*Gertz*, 418 U.S. at 345), he "played a central role" (Pl. Br., 10) in and became closely identified with the investigation into the bombings − even if he was initially "drawn into the controversy" (*Gertz*, 418 U.S. at 351) by his "passive involvement." *Dameron*, 779 F.2d at 741.

Plaintiff opposes his involuntary public figure status and purports to distinguish *Jewell* and *Hatfill* by selectively relying on the portions of those opinions where the plaintiffs were designated in the alternative as limited purpose public figures. He does so by pointing to examples of the plaintiffs' media involvement in *Jewell* (Pl. Br., 11) and public engagements as a bioterrorism expert in *Hatfill* (*id.*, 12-13). This argument conflates the limited purpose and involuntary public figure categories − again, no "purposeful action" by Plaintiff is required for the latter − and collapses into the same objection he asserts to the former. (Pl. Br., 13-14) Moreover, in relying on *Foretich v. Capital Cities/ABC Inc.* (*id.*), Plaintiff is seeking to engraft "the common-law privilege of reply onto the constitutional public-figure analysis," the novel

5

approach adopted in that case. *Lluberes*, 663 F.3d at 19 ("To our knowledge only one court of appeals has explicitly taken such a step."). The First Circuit has been "reluctant to adopt" *Foretich*'s rationale, however, which has been strongly criticized.[6] *Id.* at 19 n.12.

On rare occasions, a libel plaintiff "is drawn into a public controversy when his actions invite comment and attention, despite the fact that the plaintiff does not actively try or even want to attract the public's attention." *Cottrell v. NCAA*, 975 So.2d 306, 340-41 (Ala. 2007). If ever there were such an occasion − where Plaintiff was the initial target of a massive investigation into a terrorist attack on American soil at a historically revered athletic event in which 3 people were killed and 264 wounded − this case is it.

## II. THE OPPOSITION CONFIRMS THAT THE COMPLAINT ALLEGES NO FACTS THAT COULD PLAUSIBLY ESTABLISH "ACTUAL MALICE"

### A. None of Plaintiff's Allegations Plausibly Establish that the Broadcast Statements Complained of Were Published With Actual Malice.

Plaintiff devotes a single paragraph at page 15 of his brief to the dispositive question of whether his factual allegations plausibly establish that the broadcast statements he challenges were published with knowledge of falsity or serious doubt about their truth. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). The only fact Plaintiff has managed to muster for his actual malice allegation in the 14 months since the marathon bombing tragedy occurred is that "law enforcement officials had publicly declared that the Plaintiff was not a suspect or a person of interest" by April 16, 2013. (Pl. Br., 15, *citing* only Compl. ¶ 1) This feeble response says nothing about whether Defendants actually "disbelieved or entertained serious doubts about the

---

[6] *See, e.g.*, Robert D. Sack, SACK ON DEFAMATION § 5:3:11, at 5-66 (4th ed. 2011) ("The *Foretich* court's analysis is not persuasive. The logical connection between the plaintiffs' freedom to *speak* with relative impunity in reply to charges under common-law principles, and their not being required to prove 'actual malice' when subsequently *spoken about* under constitutional principles, is unstated and unclear. When a person has been drawn into speaking on an issue, one would think that the law should encourage the continuation of the debate rather than cutting it off once that person has spoken.") (emphasis in original).

challenged statements" (*Levesque v. Doocy*, 560 F.3d 82, 92 (1st Cir. 2009)), and confirms the insufficiency of his pleading.

Contrary to Plaintiff's claim, actual malice cannot be inferred merely from an allegation that a professional journalist did not accept or disagreed with law enforcement's pronouncement that he was not involved in the Boston Marathon bombing or related terrorist activities. *Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F.Supp.2d 230, 242 (S.D.N.Y. 2009) (granting motion for judgment on the pleadings dismissing teacher-plaintiff's defamation claim against school district because, under *Twombly* and *Iqbal*, "[i]t is simply not possible to infer malice from nothing more than the fact that the complaining children were the children of a board of education member"). *See also Lohrenz v. Donnelly*, 223 F.Supp.2d 25, 53 (D.D.C. 2002) (rejecting "an inference of 'actual malice' " as a matter of law where, prior to publication, (1) two Admirals "clearly and repeatedly" informed defendant that her Report's allegations were false, and (2) the U.S. Navy issued an official written denial of the Report's conclusions), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003). Where an event lends itself to "a number of possible rational interpretations," a defendant's "deliberate choice of [one] such . . . interpretation, though arguably reflecting a misconception, [is] not enough to create a jury issue of 'malice' under *New York Times*." *Time, Inc. v. Pape*, 401 U.S. 279, 289-90 (1971).

> [I]t appears that there was an historical record that is probably common to issues of great public interest and debate−facts and conclusions that are hotly contested, but are open to vastly different interpretations, all of which are protected by the First Amendment. No actual malice may be inferred from these disputes between defendants and the Navy officials.

*Lohrenz*, 223 F.Supp.2d at 54.

The same result is compelled here. Plaintiff's "inferential malice" theory that Defendants had to cease their broadcasts once the government publicly declared that he was no longer a

7

suspect assumes the proposition at issue − *i.e.*, that the conclusion reached by law enforcement officials was unassailable. Under the First Amendment, however, defamation defendants are not required to accept "denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (citations omitted).

### B. The First Circuit's Decisions Require Dismissal of the Complaint.

In *Shay v. Walters*, the First Circuit summarized the proper analysis of an allegation of actual malice in dismissing a defamation claim on the pleadings:[7]

> To begin, the court must strip away and discard the complaint's conclusory legal allegations. Next, the court must determine whether the remaining *factual* content permits "the reasonable inference that the defendant is liable for the misconduct alleged."
>
> In this case, the plausibility standard operates in conjunction with the substantive law of defamation. As a matter of constitutional bedrock, a plaintiff must show fault in order to impose liability upon a defendant for defamation. . . .
>
> . . . In determining whether [fault] allegations cross the plausibility threshold, an inquiring court need not give weight to bare conclusions, unembellished by pertinent facts.

702 F.3d 76, 82-83 (1st Cir. 2012) (emphasis supplied) (citations omitted). As in *Shay*, when the Complaint's conclusory legal allegations are "strip[ped] away and discard[ed]" here, its remaining factual averments cannot plausibly establish actual malice.

---

[7] For the convenience of the Court, a true and correct copy of the complaint from the First Circuit's docket in *Shay v. Walters* is included in the instant motion record as Ex. 4 (DEF 0106-0120). According to a federal district court, in *Shay* "[t]he First Circuit has provided a useful road map for courts determining whether a defamation plaintiff has sufficiently alleged actual malice[.]" *Biro*, 963 F.Supp.2d 255, 280 (S.D.N.Y. 2013); *see Schatz*, 669 F.3d at 55 (applying same two-step plausibility determination to dismiss defamation complaint on Rule 12(b)(6) motion). *Shay* involved a Rule 12(c) motion for judgment on the pleadings, but the First Circuit noted that when such a motion "is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." 702 F.3d at 82 (internal quotations and citation omitted).

In a leading case barely mentioned in passing by Plaintiff (*see* Pl. Br., 14), the First Circuit recently applied this pleading standard to allegations of actual malice in *Schatz v. Repub. State Leadership Comm.*, in upholding the dismissal of libel claims by a candidate for state political office. 669 F.3d at 56-58. Much like Alharbi, the plaintiff in *Schatz* had pleaded generalized allegations that the defendant painted him in a "sinister light" and had "basically branded him a criminal," but failed to allege facts that could plausibly establish the defendant's serious doubts about the truth of the disputed statements.[8] *Id.* In finding the pleading inadequate, and in language equally applicable here, the *Schatz* court concluded that the complaint did not plausibly allege actual malice: "[m]ost importantly for present purposes, none of Schatz's allegations − singly or together − plausibly suggest that, given the articles' reporting, the RSLC either knew that its statements were false or had serious doubts about their truth and dove recklessly ahead anyway." *Id.* at 58.

Although Plaintiff admits that he can rely only on circumstantial evidence to support his actual malice claim[9] (Pl. Br., 14), and recites authority that actual malice may properly be pleaded in a number of ways (*id.*), he does nothing in his brief to demonstrate that his allegations meet those

---

[8] The complaint in *Schatz*, a true and correct copy of which from the First Circuit's docket is included in the instant motion record as Ex. 5 (DEF 0121-0159) for the convenience of the Court, recites the standard legal definition of actual malice (Ex. 5, ¶ 44); *see also* 669 F.3d at 55 ("Schatz then used the words 'actual malice' in his complaint, claiming that the RSLC knew based on the two articles that its defamatory statements were false or was recklessly indifferent to whether they were false."). The First Circuit nevertheless dismissed it as insufficient to state a cause of action. *Id.* at 57-58. The Complaint here does not even include this boilerplate definitional language, and is therefore defective *a fortiori* based on the ruling in *Schatz*.

[9] In *Harte-Hanks Commc'ns v. Connaughton*, the Supreme Court cautioned that "courts must be careful not to place too much reliance" on circumstantial factors in assessing a libel defendant's state of mind. 491 U.S. at 668. Absent an accumulation of objective circumstantial evidence − *e.g.*, where a defendant had "obvious reasons to doubt the veracity" of its source information (*St. Amant*, 390 U.S. at 732), or made statements "so inherently improbable that only a reckless person would have put them in circulation" (*id.*) − we are aware of no case supporting that the First Amendment permits an extrapolation of constitutional malice based on the speculative theory posited by Plaintiff, and Plaintiff has cited no such authority. As set forth above in the text, the law is directly to the contrary. Otherwise, the constitutional privilege "would be diminished to the point of vanishing." *Flotech, Inc. v. E. I. DuPont de Nemours & Co.*, 814 F.2d 775, 782 (1st Cir. 1987).

9

standards. They do not. A similar situation was presented in *Parisi v. Sinclair*, 845 F.Supp.2d 215 (D.D.C. 2012), where the court affirmed dismissal of a libel complaint with prejudice:

> The complaint contains *no* factual allegations, other than the plaintiffs' own assertions that the statements were false, . . . suggesting that [defendant] either fabricated the story, that the story was so improbable that only a reckless person would have circulated the story, or that he acted *wholly* on an unverified anonymous telephone call.

*Id.* at 219 (emphasis in original). The Complaint does not and cannot allege that Defendants had *no* sources of information or "deliberately limited their investigatory inquiry." *Levesque v. Doocy*, 560 F.3d 82, 91 (1st Cir. 2009) (footnote omitted). As in *Parisi*, it is devoid of any factual allegations indicating that Plaintiff could plausibly demonstrate, whether through direct or indirect evidence, that Defendants published the allegedly actionable broadcasts with actual malice.

## CONCLUSION

Based on the foregoing reasons and authority, and those in their initial brief, Defendants respectfully request that the Court grant their Rule 12(b)(6) motion and dismiss the Complaint, in its entirety and with prejudice, for failure to state a cause of action.

GREENBERG TRAURIG, LLP

Dated: June 30, 2014

/s/ Mark A. Berthiaume
Michael J. Grygiel (Admitted *pro hac vice*)
Mark A. Berthiaume (BBO # 041715)
Zachary C. Kleinsasser (BBO # 664291)
One International Place
Boston, Massachusetts 02110
Tel: (617) 310-6000
Fax: (617) 897-0993
Email: grygielm@gtlaw.com
berthiaumem@gtlaw.com
kleinsasserz@gtlaw.com

*Attorneys for Defendants Glenn Beck;*
*TheBlaze Inc.; Mercury Radio Arts, Inc.;*
*and Premiere Radio Networks, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing on June 30, 2014.

                                            */s/ Zachary C. Kleinsasser*

*NY 243855591v2*