UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ABDULRAHMAN ALHARBI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action |
| | ) | No. 14-11550-PBS |
| GLENN BECK; THE BLAZE, INC.; MERCURY RADIO ARTS, INC.; and PREMIERE RADIO NETWORKS, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFF'S MOTION FOR SANCTIONS AND ENTRY OF DEFAULT JUDGMENT FOR WILLFUL FAILURE TO COMPLY WITH ORDER COMPELLING DISCLOSURE OF IDENTITY OF FACT WITNESSES

The plaintiff, Abdulrahman Alharbi ("Plaintiff"), moves the Court in accordance with

Fed. R. Civ. P. Rule 37(b)(2)(A) to enter sanctions against the Defendants for refusing to comply

with the Court's order [Docket No. 133] directing the disclosure of the identity of certain fact

witnesses in this action, including the entry of a default judgment in favor of the Plaintiff. In

support of his motion, the Plaintiff states the following:

Introduction

1.      This is a two-and-a-half-year-old civil action for defamation. The Plaintiff,

Abdulrahman ("Abdul") Alharbi, a now 23 year old student from Saudi Arabia, commenced this

action after the Defendant Glenn Beck stated that he provided the funding for the April, 2013

Boston Marathon bombing. Mr. Alharbi has pursued this action to exercise the right of any

person to seek "the protection of his own reputation from unjustified invasion and wrongful

1

hurt," reflecting the "basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." Rosenblatt v. Baer, 383 U.S. 75, 92, 86 S.Ct. 669, 679, 15 L.Ed.2d 597 (1966) (Stewart, J., concurring).

2.      Three years have passed since the attacks at the Boston Marathon.  The Plaintiff has been acknowledged to be an innocent bystander by the Secretary of Homeland Security and by everyone else.  The man, who together with his deceased brother, was responsible for the attacks, Dzhokhar Tsarnaev, has been convicted of those crimes and sentenced to death.  Today, however, all of the Defendants, through their pleadings and affidavits filed in this action, continue to insist that the Plaintiff provided funding to carry out the attacks and that the Secretary of Homeland Security, together with the rest of federal law enforcement, engaged in a massive exercise designed, for reasons unknown, to cover up the Plaintiff's involvement.  This contention is both incredulous and absurd.

3.      The Defendants have no proof to offer to support what they have stated about the Plaintiff.   In absence of any proof, they allege the existence of two "confidential sources."  The Defendants' testimony about the confidential sources is "vague and contradictory."  Alharbi v. The blaze, Inc. et al., __ F. Supp. 3d __, 2016 WL 4203402 *9 [Docket No. 133].  The information allegedly provided by the confidential sources lacks any detail that might be expected; the Defendants offer no information on how the financing was accomplished; what funds were used for; when the financing took place; how funds were transferred; the amount of any financing; and the alleged nature of the Plaintiff's involvement.  There are no notes or documents evidencing the alleged statements of the confidential sources.

4.       The Defendants have led the Court and the parties through an exhaustive examination of the records of the federal government's investigation.  The end result of those

efforts is that none of the documents provide any confirmation or support for what the alleged

confidential sources allegedly told the Defendants.  Id.

5.      The Court has recognized that the testimony of the confidential sources is the

only means by which the Plaintiff can verify the existence of the confidential sources or what

they allegedly told the Defendants.  Id. at *9-10.

6.      The Plaintiff's motion to compel has been pending since April 29, 2016 [Docket

No. 78].  On August 9, 2016, the Court ordered the Defendants to disclose the identity of the

alleged confidential sources. [Docket No. 133].  The Defendants sought, and were granted, a one

week extension of the deadline for disclosure.  The Defendants have not sought any interlocutory

review or other relief from the Court's order.  Despite the Court's directive to the parties to work

together to establish a means to protect the identities of the confidential sources from being

disclosed, the Defendants have made no attempt to do so.  Instead, the Defendants have simply

sent a letter to the Court [Docket No. 138] repeating arguments that the Court has already heard

and considered and stating plainly their refusal to comply with the order the Court has entered.

7.      To those accustomed to a lifetime of deference and respect to the Court and the

judicial system, the response – and the lack of any other effort to seek redress or review – is hard

to fathom.  What is apparent, however, is that the Defendants have simply chosen a litigation

tactic with the arrogant belief that whatever interim instructions or directives the Court might

enter to address the Defendants' contempt, the Defendants will be better served by suffering

those lesser consequences than by admitting that they had no sources or that those sources, if

they did exist, did not provide any information that a sentient human being would rely upon to

accuse another human being of having committed a mass atrocity that resulted in the maiming

and death of innocent men, women and children.

8.      Enough already.  There is no ambiguity in the law; the concepts that "the press is

not free to publish with impunity everything and anything it desires to publish" and that "the

press may not circulate knowing or reckless falsehoods damaging to private reputation without

subjecting itself to liability for damages" are well established.  Branzburg v. Hayes, 408 U.S.

665, 683, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972) [citations omitted].

9.       This is a civil action for damages.  The Court and the parties have invested more

than enough time and effort on these issues.  The Court should enter judgment for the Plaintiff on

his claims, determine the appropriate damages and allow the Plaintiff the measure of justice

available.  Alternative responses will only reward a knowing cynicism about the functioning of

the judicial system and offer validation to those who would attempt to hide behind the

Constitution while betraying the very values – "the essential dignity and worth of every human

being" – upon which the country was founded.

Procedural History

10.     The Plaintiff commenced this action on March 28, 2014. [Docket No. 1].  The

facts supporting the Plaintiff's claims include the following:

a.  On April 23, 2013, the Secretary of Homeland Security in public testimony before the

Senate Judiciary Committee in response to a question about the "Saudi student"

stated:

> He was not on watch list. What happened is this student was – really when you
> back (ph) it (ph) he was in the wrong place at the wrong time. He was never a
> subject. He was never really a person of interest. Because he was being
> interviewed, he was at that point put on a watch list. And then when it was
> quickly determined he had nothing to do with the bombing, the watch list status
> was removed.
>
> Docket No. 82 - Affidavit of Counsel ("Aff. Counsel."), Exhibit C, Deposition
> Exhibit No. 88, page ICE 14- 1150.00013.

b.   Subsequent to this testimony, on May 8, 2013, Mr. Beck engaged in the

following colloquy on his radio program, simulcast on television and the

internet.

> Glenn Beck: Why don't you, exactly the same with the Boston bombers, the Boston bombers, you had all the evidence, you had everything. You had the Saudi that they know in advance, and you know who the Saudi is. The money man, that's who the Saudi is. He's the – he's the  guy who actually paid for it, He's the money man.
>
> Steve Burguiere:  Do you think, I mean, is this, is this speculation, or are you reporting or somewhere in between, is that what we're learning?" …
>
> Glenn Beck: He's the money man.
>
> Aff. Counsel, Exhibit D, Deposition Exhibit 68, p. 00192- 00193 (Transcript of the broadcast of May 8, 2013).

11.    On December 23, 2015, the Defendants produced 46,801 pages of documents to

the Plaintiff in response to a July, 2015 document request.  The Plaintiff conducted the

deposition of Glenn Beck on February 17, 2016.  Mr. Beck identified Joel Cheatwood and Joe

Weasel as persons with knowledge of the sources for the stories he broadcast about the Plaintiff.

Mr. Cheatwood was the President and Chief Content Officer of the Defendant The Blaze, Inc.

Mr. Weasel was an Executive Producer for The Blaze.  The Plaintiff conducted the depositions

of Mr. Cheatwood and Mr. Weasel on March 24, 2016 and March 30, 2016.  The transcript of

Mr. Weasel's deposition was completed and delivered on April 12, 2016.

12.    In their response to the request for documents, the Defendants redacted any

information that contended would lead to the disclosure of their "confidential sources" and at

their depositions, each of Beck, Cheatwood and Weasel refused to identify the confidential

sources and to respond to other questions they contended would lead to such disclosure.

13.    On April 29, 2016, the Plaintiff filed a motion to compel the Defendants to

disclose the identity of those confidential sources that the Defendants testified were the persons

they relied upon to broadcast that the Plaintiff  provided funding for the April, 2013 Boston

Marathon bombings, and to otherwise provide unredacted copies of the documents that had been

produced previously. [Docket No. 88].

14.     The Court held a hearing on the motion to compel on May 23, 2016. [Docket No.

93].  At the hearing, the Court engaged in a colloquy with counsel over the methods that might

be used to shield the identity of the witnesses at the time of their depositions and trial testimony,

but ultimately reserved ruling on the motion to compel until the Court ruled on the summary

judgment motion.  [Transcript, Docket No. 94, pp. 37-38.]

15.     On August 9, 2016, the Court entered an Order directing the Defendants to

disclose the names of two sources by August 17, 2016 [Docket No. 133].

16.     The Court set a deadline for certain pre-trial motions of September 7, 2016 and

set a trial date of September 26, 2016. [Docket No. 134]

17.      The Defendants filed a motion to extend the time within which they had to make

the disclosures required by the order to compel until August 24, 2016.  [Docket No. 135]  The

Court allowed the motion extending the time. [Docket No. 136]

18.     The Defendants sent a letter to the Court on August 24, 2016 stating that they will

not comply with the Court's order. [Docket No. 138].

Argument

19.     Rule 37(b)(2)(A) provides that if a party fails to comply with a discovery

order, the Court may issue just orders that include the following:

(i)  directing that the matters embraced in the order or other designated facts be taken as
established for purposes of the action, as the prevailing party claims;

6

(ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)  striking pleadings in whole or in part;

(iv)  staying further proceedings until the order is obeyed;

(v)  dismissing the action or proceeding in whole or in part;

(vi)  rendering a default judgment against the disobedient party; or

(vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination

Fed. R. Civ. P. Rule 37(b)(2)(A).

Default is the Appropriate Sanction

20.     A party's unequivocal refusal to comply with a discovery order is grounds for entry of a judgment of default.  Local Union 251 v. Town Line Sand & Gravel, Inc., 511 F.2d 1198 (1st Cir. 1975) citing Atlantic Cape Fisheries v. Hartford Fire Ins. Co., 509 F.2d 577 (1st Cir. 1975).  See also Remexcel Managerial Consultants. Inc. v. Arlequin, 583 F. 3d 45 (1st Cir. 2009); Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1 (1st Cir. 2011); Affanato v. Merrill Bros., 547 F.2d 138 (1st Cir. 1977)

21.     This sanction "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Angiodynamics, Inc. v. Biolitec AG, 991 F.Supp.2d 283, 295 (D.Mass.2014) quoting  Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

22.     The First Circuit in endorsing the suitability of default judgment as a sanction has observed that:

> Although our fact-specific review necessarily "def[ies] mechanical rules," relevant substantive factors include "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." Robson, 81 F.3d at 2.  Pertinent procedural considerations include "whether the offending party was given sufficient notice and opportunity to explain its noncompliance or argue for a lesser penalty." Malloy, 512 F.3d at 26.

Vallejo v. Santini–Padilla, 607 F.3d 1, 8 (1st Cir.2010) quoting Malloy v. WM Specialty

Mortgage, 512 F.3d 23, 26 (1st Cir.2008) and Robson v. Hallenbeck, 81 F.3d 1, 2 (1st Cir.1996).

23.     The instant case is not one where there is any ambiguity about the scope of the

order or the parties' intent.  The issue has been exhaustively argued and briefed for almost four

months and the Court has spent a considerable amount of time to arrive at its decision.  In

response, the Defendants have chosen to plainly state their refusal to comply.  The Defendants

have provided the Court with their stated reasons for non-compliance. While those reasons have

been well articulated and the Defendants' objections have been made known to the Court, in the

absence of an intervening order "no credence is given to their purported excuse."

Angiodynamics at 292; see also Fed. R. Civ. P. Rule 37(d)(1)(B)(2)

24.     The lesser sanctions that the Court may impose – and that the Defendants

presumably count upon – are impractical, unfair and unjust.  The essence of the Defendants'

response to this action is – 'the confidential sources told me so.'  To arrange the presentment of

the case to a jury without reference to this issue is to make nonsense of the fact pattern and will

leave the jury either; a) without anything to do; or b) left in some manner to guess at the

Defendants' motivations or give credence to theories that are premised on the likelihood that

persons of a certain nationality or faith are more likely than not the perpetrators of terrorism – a

notion the Defendants have fully endorsed and propagated.

25.     The Court has had a very thorough review of the evidence in this case.  Absent

the "confidential sources" there is nothing left to this case, the remaining facts are these:  the

Defendants accused the Plaintiff of committing a horrendous crime and they had no basis to do

so.  Lesser sanctions are both impractical and unfair.

26.     An initial sanction of a default judgment is justified where the circumstances

require it.  A trial court is not "obliged to withhold the sanction until it has first slapped the

offender on the wrist."  Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 38-39 (1st Cir.

2012) citing Health Services, Inc. v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012); see also Damiani v.

R.I. Hosp., 704 F.2d 12, 15 (1st Cir. 1983).

The Defendants Have Collective Responsibility for the Failure to Comply

27.     The Defendants have acted collectively throughout this litigation.  They are

represented by the same counsel and they have responded on a unitary basis to discovery

requests and the pleadings filed in this action.

28.     The Defendants did not respond separately to the Motion to Compel or argue that

some of them were not responsible for the production to of the sources' identities and the

information provided by those sources.   Indeed, the Defendants referred to the "Defendants'

confidential sources"  throughout their memorandum in opposition to the motion to compel.

[Docket No. 87, pp. 10, 17.]  Now, faced with the consequences of their actions in this litigation,

they seek the shelter of nominally separate identities.  It is too late.

29.     Collectively, the Defendants produced documents that, based on the Defendants'

testimony, would reveal the identity of the confidential sources if they were not redacted.

Redactions, on information and belief, were carried out by counsel to the Defendants.

Documents within the custody or control of a party's attorney are within that party's control.

Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494 (D. Md. 2000) citing 8A Charles A. Wright,

Arthur R. Miller & Richard L. Marcus, Fed. Practice and Procedure: Civil 2d § 2177 ("a party is charged with knowledge of what its agents know or what is in the records available to it.")

30.     A party can not refuse to respond to discovery on the grounds that the information is solely within the knowledge of their attorney.  Hickman v. Taylor, 329 U.S. 495, 504, 67 S.Ct. 385, 390, 91 L.Ed. 451 (1947).

31.     In addition to their common counsel, the Defendant Mercury Radio Arts, Inc. ("Mercury") is the parent corporation of the The Blaze, Inc.  (Declaration of Misty Kawecki, dated May 27, 2016).  Mr. Beck in turn is, directly or indirectly, the majority shareholder and, on information and belief, a director and officer of Mercury and The Blaze, Inc. (Declaration of Glenn Beck, Docket No. 112).  Premiere Radio Networks, Inc. ("Premiere") in turn has the contractual right to control this litigation.  (Declaration of Julie Talbot, Exhibit 1, page 25, Section 20(C), Docket No. 116).  Upon information and belief, Premiere has exercised this right and directs the conduct of this litigation.  Each of Mercury, The Blaze, Beck and Premiere through contract or operation of law, acts as the agent of each other.  A party is charged with what its agents know and what is in the documents available to it. Younes v. 7-Eleven, Inc., 312 F.R.D. 692, 707 (D. NJ. 2015).

32.     In support of their motion for summary judgment,  Mercury, The Blaze, Beck and Premiere submitted the affidavits of Glenn Beck, Joel Cheatwood and George Weasel (Docket Nos. 111,112 and 117). In those affidavits filed and submitted on their behalf by their common counsel, Mercury, The Blaze, Beck and Premiere attested to the fact that they believe today that the Plaintiff financed the Boston Marathon bombings in April 2013.  They could not do so without a good faith belief in the truth of those statements.   There is either no basis for those beliefs or a basis they simply choose not to disclose.  It is not possible, however, that the

information that supports those statements is outside of their control. The very opposite is true.

### Costs and Attorneys Fees

33.     Fed. R. Civ. P. Rule 37(b)(2)(C) provides that the Court may order a sanctioned party to pay the reasonable expenses and attorney's fees caused by its failure.   Fed. R. Civ. P. Rule 37(b)(2)(C) .  Counsel for the Plaintiff represents the Plaintiff on a pro bono basis, without the payment of any fees or costs or the expectation of same, pursuant to its involvement in the Boston Bar Association Marathon Assistance project.  Costs and fees are tracked, however, and to the extent allowed counsel will supplement this request with a detail of fees and expenses incurred in prosecuting the motion to compel.

### Conference Certification

34.     The Plaintiff certifies that, in accordance with Rule 37 and Local Rule 7.1(a)(2), counsel has conferred by email communication and by phone with counsel in good faith in an attempt to resolve or narrow the issues that are presented in this motion.

Wherefore, the Plaintiff prays that the Court:

   a. enter a default judgment in favor of the Plaintiff against all Defendants in this action;

   b. determine the damages incurred by the Plaintiff and enter judgment against all Defendants in that amount, plus interest and costs;

   c. award the Plaintiff the value of fees and costs incurred in prosecuting the motion to compel; and

   d. grant such other and further relief as is just.

ABDULRAHMAN ALHARBI

By his attorneys,


/s/ Peter J. Haley
Peter J. Haley (BBO # 543858)
peter.haley@nelsonmullins.com
Gregory J. May (BBO #642646)
greg.may@nelsonmullins.com
NELSON MULLINS RILEY & SCARBOROUGH LLP
One Post Office Square – 30th Floor
Boston, Massachusetts 02109-2127
Telephone:     (617) 573-4700

Dated: August 26, 2016

## CERTIFICATE OF SERVICE

I, Peter J. Haley, hereby certify that on this 26th day of August, 2016 this pleading was served upon counsel to the Defendants in this action.

/s/Peter J. Haley
Peter J. Haley