UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ABDULRAHMAN ALHARBI, | ) ) ) | |
| Plaintiff, | ) ) | |
| − v. − | ) ) ) | CIVIL ACTION NO. 1:14-cv-11550-PBS |
| GLENN BECK; THE BLAZE, INC.; MERCURY RADIO ARTS, INC.; AND PREMIERE RADIO NETWORKS, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO CERTIFY INTERLOCUTORY APPEAL**

GREENBERG TRAURIG, LLP

Michael J. Grygiel (NYS # 2291821)
  (Admitted to practice *pro hac vice*)
Zachary C. Kleinsasser (BBO # 664291)
One International Place, 20th Floor
Boston, Massachusetts  02110
Tel.:  617-310-6000
Fax:  617-310-6001
E-mail:  grygielm@gtlaw.com
            kleinsasserz@gtlaw.com

*Attorneys for Defendants Glenn Beck;
TheBlaze Inc.; Mercury Radio Arts, Inc.;
and Premiere Radio Networks, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL POSTURE ....................................................................................................... 2

THE STANDARD GOVERNING INTERLOCUTORY APPEALS
      UNDER 28 U.S.C. § 1292(b) ........................................................................................ 4

ARGUMENT ............................................................................................................................. 6

I.      EACH OF THE REQUIREMENTS FOR CERTIFYING THE ORDER'S
       PUBLIC FIGURE RULING IS SATISFIED. .................................................................... 6

      A.      Whether Plaintiff Is a Limited Purpose Public Figure Presents a
              Controlling Question of Law. ................................................................................. 6

      B.      Substantial Ground For Difference of Opinion. .................................................... 7

      C.      Materially Advancing The Ultimate Termination of the Litigation. .................... 10

II.     EACH OF THE REQUIREMENTS FOR CERTIFYING THE ORDER'S
       CONFIDENTIAL SOURCE RULING IS SATISFIED. ................................................... 11

      A.      Controlling Question of Law. .............................................................................. 11

      B.      Substantial Ground For Difference of Opinion. .................................................. 14

      C.      Materially Advancing the Ultimate Termination of the Litigation. ...................... 15

CONCLUSION ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adler v. Condé Nast Publs., Inc.*,
   643 F.Supp. 1558 (S.D.N.Y. 1986)........................................................................5

*Alharbi v. Beck*,
   62 F. Supp.3d 202 (D. Mass. 2014) ...........................................................3, 6, 8, 9

*Bose Corp. v. Consumers Union*,
   466 U.S. 485 (1984)........................................................................................7

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
   633 F.2d 583 (1st Cir. 1980)...........................................................5, 11, 14, 16

*Cohen v. Cowles Media Co.*,
   501 U.S. 663 (1991)......................................................................................15

*Gray v. St. Martin's Press, Inc.*,
   221 F.3d 243 (1st Cir. 2000)...........................................................................7

*Herbert v. Lando*, No. 74 CIV. 434-CSH,
   1985 WL 463 (S.D.N.Y. Mar. 26, 1985) .......................................................5

*Jones v. Taibbi*,
   400 Mass. 786 (Mass. 1987) ...................................................................12, 13

*Lluberes v. Uncommon Prods., LLC*,
   663 F.3d 6 (1st Cir. 2011).............................................................................9

*Mandel v. The Boston Phoenix, Inc.*,
   456 F.3d 198 (1st Cir. 2006)......................................................................6, 7

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)......................................................................................5

*Nicholson v. Promotors On Listings*,
   159 F.R.D. 343 (D. Mass. 1994)....................................................................7

*Pendleton v. City of Haverhill*,
   156 F.3d 57 (1st Cir. 1998)............................................................................7

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
   894 F.Supp.2d 144 (D. Mass. 2012) .........................................................4, 10

*Price v. Time, Inc.*,
   416 F.3d 1327 (11th Cir. 2005) .....................................................................6

*Time, Inc. v. McClaney*,
    406 F.2d 565 (5th Cir. 1969) ...................................................................................6

*Trotter v. Jack Anderson Enters.*,
    818 F.2d 431 (5th Cir. 1987) ...................................................................................7

*Trs. of Boston Univ. v. Everlight Electronics Co.*, No. CV. 12-11935-PBS,
    2016 WL 4238554 (D. Mass Aug. 9, 2016) ..............................................................4, 10, 10

*United States v. Marcos*, No. 87 Cr. 598 (JFK),
    1990 WL 74521 (S.D.N.Y. June 1, 1990) .........................................................15

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................. *passim*

**Other Authorities**

Fed. R. App. P. 5(a) ..............................................................................................4

Fed. R. Civ. P. 56 .................................................................................................3

Defendants Glenn Beck, TheBlaze Inc., Mercury Radio Arts, Inc. and Premiere Networks, Inc. ("Defendants") respectfully submit this memorandum of law in support of their motion to certify this Court's Memorandum and Order dated August 9, 2016 [Dkt. No. 133] ("Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and to stay this action pending adjudication of that appeal.

## PRELIMINARY STATEMENT

There are two potentially dispositive rulings in the Order which cry out for interlocutory appellate review before this Court and the parties expend the vast amount of time, effort and resources which would be required to try this case as to liability and/or damages: (i) Plaintiff's public figure status; and (ii) compelled disclosure of journalists' confidential sources.  Reversal by the First Circuit of either or both of those rulings could well avoid the need for any trial, but would certainly at the very least dramatically alter the scope of any such trial.  The type and amount of evidence required, its admissibility and the specific issues for the jury to resolve would all be changed.  The inevitable result of such a reversal would be the vacating of any intervening jury verdict.  The extensive time and effort expended by those jurors, the witnesses, this Court and the litigants in any such trial will have been wasted.  Interlocutory review of those rulings under 28 U.S.C. § 1292(b) is designed to prevent such a needless expenditure of valuable resources.

But in this case, the stakes are even higher.  Not only do both of these rulings squarely impact critical First Amendment freedoms, and the proper functioning of a free press in a democratic society, but conducting a protracted and costly trial prior to appellate review would itself undermine the very purpose of the heightened burdens imposed on defamation plaintiffs in actions against media defendants.  The risk of being subjected to a time-consuming and expensive defamation trial itself chills protected First Amendment freedoms.

As discussed more fully below, the prerequisites to interlocutory appellate review under 28 U.S.C. § 1292(b) are all satisfied here.  Both rulings in the Order were predicated on controlling legal questions as to which there is substantial ground for difference of opinion: (i) the denial of limited purpose public figure status excluded from consideration a critical interview for *The Islamic Monthly* based on the date the magazine decided to publish that interview, rather than basing that determination on the earlier date in which the Plaintiff elected to grant and participate in that interview; and (ii) the compelled disclosure of confidential sources was predicated on a balancing of putative litigation needs which failed to take into account that this Court would only require Plaintiff to bear the burden of proving objective negligence with respect to publication of the challenged statements, rather than the rigorous burden of proving subjective actual malice.  Where, as here, interlocutory appellate review of these two rulings will also materially advance the ultimate termination of the litigation, certification is appropriate under 28 U.S.C. § 1292(b).

## **PROCEDURAL POSTURE**

Plaintiff Abdulrahman Alharbi has sued Defendants for allegedly defaming him in their reporting to the public and commenting upon the terrorist bombings that took place at the April 15, 2013, Boston Marathon.  This tragic attack received immediate and pervasive press coverage not only locally, but throughout the world.  In the immediate aftermath of the attack, federal law enforcement agencies identified Plaintiff, a Saudi Arabian citizen, as a "suspected terrorist" connected to the bombings.  Plaintiff, who was near the finishing line and received treatment for minor burns, was interrogated by federal authorities while he was in the hospital.  On April 23, 2013, then-Secretary of Department of Homeland Security Janet Napolitano publicly denied that Plaintiff was ever a suspect in the government's investigation.  Defendants' broadcasts between April 19, 2013, and May 8, 2013, included statements regarding Plaintiff which dispute

Secretary Napolitano's public denial of his identification by federal law enforcement authorities as the initial suspect in their investigation.   Those statements, which are the subject of this defamation action, were based on information provided to Defendants by confidential sources.

In April 2016 − a month after the close of discovery − Plaintiff moved to compel Defendants to disclose the identity of the confidential sources who had provided the information and documents Defendants relied on in publishing the challenged statements about Plaintiff.   As this Court noted in the Order, Defendants' sworn declarations verified that the sources "were only willing to speak with the defendants after they received promises of confidentiality because they could face 'loss of employment and even criminal charges' if their identities are disclosed." (Order p. 26)   Moreover, Defendants also disclosed in sworn declarations the position and experience within the government of each of these sources which objectively qualified them to provide reliable information about the investigation, without identifying them by name.   (Order pp. 8-12)

On May 31, 2016, Defendants moved for summary judgment under Fed. R. Civ. P. 56.   A key component of that motion was Defendants' contention that, as a matter of law, Plaintiff is a limited purpose public figure required under the First Amendment to prove the challenged statements were published with actual malice, rather than a private figure required only to prove those statements were published negligently.   This Court had previously determined that "a public controversy existed, 'whether it is framed narrowly as a debate over who was responsible for the Marathon bombings, or more broadly as part of an ongoing discussion about public safety, national security, and terrorism.'"   (Order p. 40, *quoting Alharbi v. Beck*, 62 F. Supp.3d 202, 208 (D. Mass. 2014)).   Defendants position was that by granting at least five interviews to the press, Plaintiff became a limited purpose public figure because he had access to media

channels that he exploited to tell the public his side of the story, and had attempted to influence the resolution of that controversy through that series of interviews before Defendants published the challenged statements.

The Order first adjudicated Plaintiff's motion to compel disclosure of confidential sources, and then Defendants' summary judgment motion. The Court ordered Defendants "to disclose the identities of Sources 1 and 2, who allegedly were adamant that Alharbi was involved in financing the attacks," and to arrange with Plaintiff's counsel to schedule the confidential sources' depositions. (Order p. 29) The Order then determined, in denying summary judgment on the defamation claims, that "the plaintiff is not a limited-purpose nor involuntary public figure." (Order p. 61)

Defendants respectfully request that the Court certify those two rulings for interlocutory appeal under 28 U.S.C. § 1292(b).

## THE STANDARD GOVERNING INTERLOCUTORY APPEALS UNDER 28 U.S.C. § 1292(b)

This Court recently recognized in certifying an interlocutory appeal under 28 U.S.C. § 1292(b) that such certification requires "an order that (1) 'involves a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) as to which 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.' " *Trs. of Boston Univ. v. Everlight Electronics Co.*, No. CV 12-11933-PBS, 2016 WL 4238554, at *1 (D. Mass. Aug. 9, 2016) (quoting 28 U.S.C. § 1292(b)). *Accord, Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 894 F.Supp.2d 144, 158 (D. Mass. 2012). An interlocutory order may be amended by a district court at any time to add the prescribed certification. *See* Fed. R. App. P. 5(a).

Although this Court correctly noted in *Trs. of Boston University* that such interlocutory appeals require "exceptional circumstances," orders compelling journalists to disclose confidential sources, and orders denying public figure status in defamation cases, provide precisely such circumstances because of their chilling effect on the exercise of First Amendment freedoms. Accordingly, certification under 28 U.S.C. § 1292(b) of an order denying public figure status is appropriate "[i]n light of the strong first amendment policy in favor of disposing of libel actions without trial, where such disposition is appropriate." *Adler v. Condé Nast Publs.*, 643 F.Supp. 1558, 1567 (S.D.N.Y. 1986). Indeed, the public figure category exists to enable courts to identify that specific subset of libel claims as to which the First Amendment demands heightened protection to prevent journalists from engaging in self-censorship to avoid the risk of protracted and costly litigation. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). An interlocutory appeal at this stage is a "salutary step" to "minimiz[e] the expenditure" of limited resources on time-consuming trials that effectively chill protected speech. *Herbert v. Lando*, No. 74 CIV. 434-CSH, 1985 WL 463, at *2 (S.D.N.Y. Mar. 26, 1985).

Similarly, certification of an order compelling disclosure of confidential sources to a plaintiff bearing only the burden of proving negligence as the fault standard in a defamation case is appropriate in light of the inhibiting effect such compelled disclosure will likely have on the future willingness of confidential sources − in particular, government whistleblowers − to provide information to journalists. Such confidential sources are the lifeblood which enables members of the Fourth Estate to continue effectively performing their role as the public's watchdog over otherwise hidden government activity and other matters of public concern.

Based on these constitutional free speech considerations, the First Circuit in *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980) accepted an interlocutory

appeal under 28 U.S.C. § 1292(b) of an order compelling disclosure of confidential sources and also determining public figure status. Other Circuits have also accepted interlocutory appeals of both types of orders. *E.g.*, *Price v. Time, Inc.*, 416 F.3d 1327, 1334 (11th Cir. 2005) (confidential source disclosure); *Time, Inc. v. McClaney*, 406 F.2d 565, 566 (5th Cir. 1969) (accepting interlocutory appeal of order denying public figure status, and resulting denial of summary judgment, because of First Amendment considerations).

## ARGUMENT

### I.   EACH OF THE REQUIREMENTS FOR CERTIFYING THE ORDER'S PUBLIC FIGURE RULING IS SATISFIED.

#### A.   Whether Plaintiff Is a Limited Purpose Public Figure Presents a Controlling Question of Law.

There can be no doubt that this Court's ruling that Plaintiff is a private figure, and not a limited purpose public figure, is a controlling question of law. By ruling at the summary judgment stage that Plaintiff is a private figure, this Court acknowledged that the issue is a question of law. Indeed, in its prior decision denying Defendants' motion to dismiss, this Court recognized that "public figure status is 'a question of law, . . . properly resolved by the court, not by the jury, regardless of the contestability of the predicate facts.'" *Alharbi*, 62 F. Supp.3d at 207, *quoting Pendleton v. City of Haverhill*, 156 F.3d 57, 68 (1st Cir. 1998) (public figure determination is "archetypical legal question"). The First Circuit has also emphasized that even where the determination of the plaintiff's status is dependent on the underlying factual record, it nevertheless remains "a legal determination." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 204 (1st Cir. 2006).

Moreover, "the distinction between public figures and public officials, on the one hand, and purely private figures, on the other hand, has potentially profound consequences in a defamation case. . . . A plaintiff's status, therefore, shapes the course of any defamation

litigation." *Mandel*, 456 F.3d at 201.  Indeed, on appeal – interlocutory or otherwise – the Court

of Appeals must conduct an independent review of the full record and of the private/public figure

determination "to preserve the precious liberties established and ordained by the Constitution."

*Bose Corp. v. Consumers Union*, 466 U.S. 485, 510-11 (1984).[1]

    The Court's public figure determination in the Order has a direct impact on Plaintiff's

burdens, the standard of care with respect to which the jury will be charged, and the nature of the

evidence the parties must present.  It plainly presents a controlling question of law within the

meaning of 28 U.S.C. § 1292(b).

### B.    Substantial Ground For Difference of Opinion.

    Defendants contended in their summary judgment papers that Plaintiff's limited purpose

public figure status was established by, *inter alia*, the five press interviews Plaintiff gave to four

different media outlets.[2]  *See* Order pp. 41-43.  Defendants demonstrated that Plaintiff did not

merely deny responsibility for the attack, but also leveraged his media access to (1) repeatedly

(and erroneously) minimize his involvement in the investigation; (2) publicly vent his

frustrations about having been racially profiled by both the U.S. government in being identified

as a suspect and by American news organizations in their coverage of the bombing; and

---

[1]    In considering certification here, there should be no concern that the First Circuit will need to study the record to decide the issue, because it has a constitutional duty to conduct *de novo* review of the record evidence on a defamation plaintiff's public or private figure status.  *Bose Corp.*, 466 U.S. at 510-11; *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 251 (1st Cir. 2000) (limited purpose public figure determination is "an issue of law to be resolved by the district judge and reviewed *de novo* by us").

[2]    In downplaying Plaintiff's engagements with the media, the Order characterizes various of Plaintiff's newspaper interviews as "short pieces" and notes that his appearance on a popular Saudi Arabian television talk show "lasted for roughly five and a half minutes."  (Order p. 42)  Defendants respectfully submit, however, that the First Amendment does not impose a public figure litmus test based on the number, frequency, or duration of a libel plaintiff's media appearances.  As the First Circuit has stated, even a single newspaper interview "possesses great significance for a First Amendment analysis."  *Pendleton v. City of Haverhill*, 156 F.3d 57, 69 (1st Cir. 1998).  Moreover, courts have found public figure status even though – in contrast with Plaintiff's sustained encounters with the media here – the defamation plaintiff never "actively 'engage[d] the public's attention' and his name did not appear very frequently in the press."  *Trotter v. Jack Anderson Enters.*, 818 F.2d 431, 435-36 (5th Cir. 1987); *see also Nicholson v. Promotors On Listings*, 159 F.R.D. 343, 344-45, 352 (D. Mass. 1994) (Saris, J.) (held, limited purpose public status established with no press appearances by plaintiff).

(3) complain about government leaks to the press of information regarding him and its investigation.  This Court acknowledged in the Order that, by granting an interview to Amina Chaudary published in *The Islamic Monthly*, Plaintiff had taken advantage of his media access to express those frustrations.  (Order p. 18)  Indeed, Plaintiff admitted in his deposition that he had participated in that interview because it provided him with "an opportunity to tell [his] story." (Grygiel Decl. ¶ 49 and Ex. 2, p. 454) [Dkt. No. 110]

However, the Court determined that because *The Islamic Monthly* article was published on May 21, 2013 – after Defendants' last challenged broadcast on May 8 –Plaintiff's detailed interview could not be considered in determining whether he was a limited purpose public figure. (Order p. 43)

Substantial ground for difference of opinion over this ruling exists because the relevant timeframe is ***not*** when the article was published, but rather when Plaintiff voluntarily chose to conduct the interview reported by *The Islamic Monthly*.  It is Plaintiff's purposeful recourse to the media to present his own version of events that triggers limited purpose public figure status, ***not*** when the media decides to publish Plaintiff's story.  Indeed, this Court recognized in its prior order denying Defendants' motion to dismiss that, once a public controversy exists, "the critical question then becomes whether the plaintiff ***has attempted to*** 'influence the resolution' of that controversy."  *Alharbi*, 62 F.Supp.3d at 207 (emphasis added), *quoting Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 14 (1st Cir. 2011).

Therefore, the relevant time frame for considering *The Islamic Monthly* interview in the determination of Plaintiff's public figure status is not its publication date, but rather when Plaintiff elected to participate in that interview, which he admits provided an opportunity to spin

what happened at the expense of an accurate presentation of the true facts.  (Grygiel Decl. ¶ 61 and Ex. 2, pp. 497-98) [Dkt. No. 110]

Although this Court asserts in the Order that the parties do not know the date *The Islamic Monthly* interview actually occurred (Order p. 17), the record confirms that, after first exchanging numerous Facebook messages with Ms. Chaudary and meeting her for lunch at a restaurant in Cambridge on April 27, 2013, and then proceeding to obtain clearance from both his lawyer and the Saudi Arabian Embassy, Plaintiff recorded an interview with her on either April 30 or (at the latest) May 1, 2013 – ***before*** the May 8, 2013 broadcast.  (Grygiel Decl., Ex.22, pp. ALHARBI 01150-01153; *see also id.*, Ex. 2, pp. 442, 444-45, 454).  [Dkt. No. 110] This Court recognizes on page 43 of its Order that, according to *Lluberes v. Uncommon Prods.*, 663 F.3d at 15, it is only "***plaintiffs'*** 'relevant conduct' " which must occur *before* Defendants' challenged publication of the allegedly defamatory statements (emphasis added).   Here, ***Plaintiff's*** relevant conduct included his numerous communications with Ms. Chaudary beginning on or before April 22, 2013, in arranging for the interview, and then participating in that interview no later than May 1, 2013 – all of which occurred ***before*** the last broadcast on May 8, 2013.  Publication of the article on May 21 was not Plaintiff's conduct, but rather that of the editors of *The Islamic Monthly*.   There is therefore substantial ground for difference of opinion over whether Plaintiff was a limited purpose public figure where − based on the undisputed evidence in the record − ***before*** the last of the challenged the broadcasts, Plaintiff had used his media access to "tell his story" to the press, and had thereby "***attempted to*** 'influence the resolution' of that controversy."   *Alharbi*, 62 F.Supp.3d at 207, *quoting Lluberes*, 663 F.3d at 13 (emphasis added).

**C.       Materially Advancing The Ultimate Termination of the Litigation.**

As this Court recognized in *Boston Univ. v. Everlight Electronics Corp.*, 2016 WL 4238554, at *2, an interlocutory appeal materially advances the ultimate termination of litigation if it "could forestall the need for" a further trial. Similarly, this certification requirement is also satisfied if an interlocutory appeal "will conserve court, party, and nonparty time and resources by clarifying the proper scope of the action." *Plumbers' Union Local No. 12 Pension Fund* v, 894 F.Supp.2d at 158.

Interlocutory review of this Court's Order determining Plaintiff to be a private figure for First Amendment purposes, fits squarely within those parameters.   The answer to the legal question regarding Plaintiff's public figure status will, at a minimum, affect the type and amount of evidence required at trial, the admissibility of evidence, and the specific issues for the jury to resolve.  Certification is thus warranted to avoid the unnecessary waste that would be occasioned for all concerned to try this case under the private figure standard, only to be required to retry the case if the First Circuit reverses on the public figure issue.

Certification is further warranted because interlocutory review could potentially avoid the burdens of trial altogether. The Order does not address Defendants' position that Plaintiff cannot satisfy the burden of proving actual malice with clear and convincing evidence if he qualifies as a limited purpose public figure.  If the First Circuit determines Plaintiff to be a limited purpose public figure based on the multiple interviews he granted before the last of the challenged broadcasts, then this Court may make that determination upon remand based on the absence of actual malice evidence, in which case no trial would be required.  Either way, an interlocutory appeal will advance the ultimate termination of this litigation by "clarifying the proper scope of this action," if not also "forestall[ing] the need for further trial." *Plumbers' Union Local No. 12 Pension Fund*, 894 F.Supp.2d at 158; *Trs. of Boston Univ.*, 2016 WL 4238554, at *2.

10

## II.   EACH OF THE REQUIREMENTS FOR CERTIFYING THE ORDER'S CONFIDENTIAL SOURCE RULING IS SATISFIED.

### A.   Controlling Question of Law.

In *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d at 594, the First Circuit addressed in an interlocutory appeal under 28 U.S.C. § 1292(b) not only the issue of whether the plaintiff was a public figure, but also whether the identification of confidential sources could be compelled by a private figure plaintiff who was required to prove negligence as the standard of fault in that defamation case.  The First Circuit reversed the trial court for having not engaged in the proper balancing test, in part because the trial court had improperly determined that the governing standard of fault was actual malice, rather than negligence.  *Id*. at 599.  The First Circuit recognized that, although there may be exceptions, "the discovery needs of a non-public figure plaintiff are generally less than those of a . . . public figure." *Id*. at 595.  *Bruno & Stillman* also emphasized that the "litigation needs" of a private figure plaintiff may well be outweighed by the threatened "harm" that would be caused by disclosure of a confidential source.  *Id*.

This Court's Order, like the order reversed and vacated in *Bruno & Stillman* after an interlocutory appeal under 28 U.S.C. § 1292(b), does not distinguish between the litigation needs of a public figure plaintiff and those of a private plaintiff; indeed, this Court adjudicated the confidential source issue ***before*** determining whether Plaintiff was a private or public figure. However, that distinction is critical to the *Bruno & Stillman* "balancing test," which this Court acknowledged it must apply: "courts must balance the potential harm to the free flow of information that might result against the need for the requested information."  (Order p. 23, *quoting Bruno & Stillman*, 633 F.2d at 596)  The Order fails to identify what "litigation need" there would be for the identities of these confidential sources if Plaintiff is determined to be a private figure who is only required to prove negligence as the standard of fault. Instead, the

11

Court simply announces its agreement with Plaintiff that "the only way to verify or confirm what the confidential sources told the defendants would be to speak with the sources themselves." (Order p. 25)

However, regardless of whether that assertion would be accurate under a ***subjective*** "actual malice" standard of fault, there is no need to confirm what the sources told the defendants if, as this Court later determined in the Order, Plaintiff need only prove ***objective*** negligence.   Unlike actual malice, the "negligence" issue is whether those sources were sufficiently qualified and experienced to render Defendants' reliance on their information ***objectively reasonable***.   *Jones v. Taibbi*, 400 Mass. 786, 799 (Mass. 1987) ("Under the negligence standard . . . the defendants are required to 'act reasonably in checking on the truth or falsity . . . of the communication before publishing it'") (citation omitted).

The objective reasonableness of Defendants' reliance on those sources is shown by their position in and experience with such government investigations, as well as their access to internal government communications regarding the Boston bombing investigation, which is undisputed in the record.   Importantly, the Order acknowledges that Defendants had already disclosed extensive information regarding the positions and experience within the government of Source 1 and Source 2 which objectively qualified them to provide reliable information about the investigation:

> Source 1 is a founding member of the Department of Homeland Security (DHS), where Source 1 has worked for thirteen years. Source 1's responsibilities include investigating and analyzing terrorists and their support networks. Source 1 is considered one of the country's leading experts on Islamic terrorism. Source 1 has trained Joint Terrorist Task Force (JTTF) agents, including some of those who were involved in the Boston Marathon bombing investigation.

* * *

12

> Source 2 is a senior investigator at DHS, where Source 2 has worked for more than twenty years . . . Source 2 served as a liaison between law enforcement and Congress during the Boston Marathon bombing investigation, and "regularly communicated with field agents on the ground in Boston, including JTTF agents, ICE agents, and FBI agents." . . .
>
> Source 2 also provided [Defendants] with two official government documents, produced in this case as Exhibits 60 and 61.  Exhibit 60 is a four-page printout of screen shots from the federal government's Treasury Enforcement Communications System II (TECS II) database, which appears to identify the plaintiff as a "suspected terrorist," who is "armed & dangerous" on the fourth page. . . .
>
> Exhibit 61 is a one-page excerpt from the plaintiff's "Event File" which states the plaintiff is "inadmissible to the U.S." [under a section of the INA rendering "inadmissible" an alien whom] "a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity."

(Order pp. 8-9 and 9-11)

There is no record support for contending Plaintiff needs additional information about those sources to satisfy the negligence fault standard. Whether those sources' positions and experience within the government qualify them as reliable sources for the statements Defendants made about the investigation of Plaintiff's role in the bombing, so that Defendants acted "reasonably in checking on the truth or falsity" of those statements under the objective reasonableness test imposed by a negligence fault standard (*Jones v. Taibbi*, 400 Mass. at 799), is now an issue to be determined by the jury, since the Court has denied Defendants' summary judgment motion.  Therefore, even if the identities of those sources, and their testimony about what they told the defendants, were somehow needed to show subjective actual malice, they are ***not*** needed to show objective negligence.

Accordingly, whether this Court was required under *Bruno & Stillman* to balance the reduced need for identification of confidential sources where the fault standard is negligence,

rather than the degree of need for such disclosure which would be required to prove actual malice, is a controlling question of law governing Plaintiff's motion to compel disclosure of confidential sources which satisfies the first element of 28 U.S.C. § 1292(b).

> **B.     Substantial Ground For Difference of Opinion.**

The First Circuit in *Bruno & Stillman* acknowledged that the legal question of whether a privilege against compelled disclosure of confidential sources applies in a defamation action when the standard of fault is negligence "is a question left open" by then-existing precedent. *Bruno & Stillman*, 633 F.2d at 594.  Our research has not identified any controlling published decision in the over 35 years since *Bruno & Stillman* which compelled the disclosure of confidential sources by a media defendant in a defamation action where negligence was the fault standard.  Substantial grounds for difference of opinion therefore exist as to whether this Court's Order directing such disclosure of confidential sources under what this Court has determined to be a negligence fault standard can be sustained under the *Bruno & Stillman* balancing test.

Moreover, the Order recognizes that "[o]n the other side of the scale, the defendants' promise of confidentiality to the sources weighs against compelled disclosure."  (Order p. 28)  Therefore, by balancing on Plaintiff's side of the scale the heavier litigation needs predicated on a subjective actual malice standard of fault, rather than the reduced litigation needs predicated on an objective negligence fault standard (*Bruno & Stillman*, 633 F.2d at 595), substantial ground also exists for difference of opinion over whether this Court properly conducted the constitutional balancing test mandated by the First Circuit, and over what the result of that balancing test would have been if this Court had excluded from Plaintiff's side of the scale the heavier litigation needs imposed by the actual malice fault standard.

14

**C.      Materially Advancing the Ultimate Termination of the Litigation.**

This Court's Order presented Defendants with a severe Hobson's choice – disclose the identities of Source 1 and Source 2 in violation of promised confidentiality, and thereby cause substantial harm to those sources, or face sanctions such as "judgment of dismissal or default." [Dkt. No. 134, p. 4]  As shown by undersigned counsel's August 24, 2016, letter to the Court [Dkt. No. 138], Defendants cannot comply with the Order to disclose the identities of Source 1 and Source 2.   As explained in that letter, aside from potential liability to those sources for breach of the promised confidentiality (*Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991)), such disclosure would severely and irreparably harm both Source 1 and Source 2, as well as the public which relies on investigative journalists' access to confidential sources as a lifeline to information regarding government affairs and other matters of public concern that would otherwise remain hidden from public view: "effective gathering of newsworthy information in great measure relies upon the reporter's ability to secure the trust of news sources.  Many doors will be closed to reporters who are viewed as investigative resources of litigants.  The hindrance to the free flow of information which accompanies this perception is inimical to the First Amendment."  *United States v. Marcos*, No. 87 Cr. 598 (JFK), 1990 WL 74521, at *2 (S.D.N.Y. June 1, 1990).

As a result of Defendants' inability to comply with the Order's directive to disclose confidential sources, Plaintiff has moved for entry of a default judgment on liability with a jury trial conducted on damages.   [Dkt. No. 141]   Regardless of whether the Court enters that draconian sanction, or a lesser sanction pertaining to Defendants' sources at a liability trial, any trial that is conducted before the First Circuit has the opportunity to review whether this Court properly compelled disclosure of these confidential sources' identities would be a waste if the First Circuit reverses this Court's Order.  A jury trial on liability predicated on an impermissible

sanction regarding Defendants' sources would certainly need to be retried, because that sanction would plainly be improper and prejudicial if the First Circuit determines that confidential source disclosure should not have been compelled.  Similarly, a jury verdict only on damages after entry of a default on liability would also need to be vacated if the First Circuit reverses the Order and determines that either a jury trial or summary judgment was required on liability.

The First Circuit will be reviewing the Order compelling disclosure of confidential sources, now or later.  Reviewing it now will advance the resolution of this litigation by avoiding the wasteful expenditure of extensive resources in a high profile liability or damages trial that will need only to be retried if the First Circuit agrees that the extraordinary remedy of confidential source disclosure was not required under the *Bruno & Stillman* balancing test due to the reduced need for disclosure under a negligence fault standard.  Of course, if the First Circuit determines that actual malice, rather than negligence, must be the standard of fault as the result of Plaintiff being a limited purpose public figure, then interlocutory review could even terminate this litigation without need for conducting a liability or damages trial at all.  Either way, immediate First Circuit interlocutory review of the Order will materially advance the ultimate termination of this litigation, and thereby potentially eliminate any need for disclosure of confidential sources.

## CONCLUSION

For the foregoing reasons, this Court should certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b).

16

Respectfully submitted,

GREENBERG TRAURIG, LLP,

Dated:   September 2, 2016

*Michael J. Grygiel*

Michael J. Grygiel (*admitted pro hac vice*)
Zachary C. Kleinsasser (BBO# 664291)
One International Place
Boston, Massachusetts 02110
Tel:  (617) 310-6000
Fax:  (617) 897-0993
Email:  grygielm@gtlaw.com
Email:  kleinsasserz@gtlaw.com

*Attorneys for Defendants Glenn Beck;
TheBlaze Inc.; Mercury Radio Arts, Inc.;
and Premiere Networks, Inc.*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2016 this document was served upon counsel to Plaintiff in this action.

*Zachary C. Kleinsasser*

Zachary C. Kleinsasser

*ALB 1957283v5*