```
                                                                    1




 1                   IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MASSACHUSETTS
 2

 3      ABDULRAHMAN ALHARBI,                )
                                            )
 4               Plaintiff                  )
                                            )
 5           -VS-                           )   CA No. 14-11550-PBS
                                            )   Pages 1 - 17
 6      THE BLAZE, INC., et al,             )
                                            )
 7               Defendants                 )

 8

 9                              **HEARING**

10               BEFORE THE HONORABLE PATTI B. SARIS
                 UNITED STATES CHIEF DISTRICT JUDGE
11

12

13

14

15                              United States District Court
                                1 Courthouse Way, Courtroom 19
16                              Boston, Massachusetts 02210
                                October 17, 2016, 3:32 p.m.
17

18

19

20

21

22

23                       LEE A. MARZILLI
                       OFFICIAL COURT REPORTER
24                   United States District Court
                     1 Courthouse Way, Room 7200
25                       Boston, MA  02210
                           (617)345-6787
```

1  A P P E A R A N C E S:

2      PETER J. HALEY, ESQ., Nelson Mullins Rile & Scarborough, LLP, One Post Office Square, 30th Floor, Boston, Massachusetts,
3  02109, for the Plaintiff.

4      MICHAEL J. GRYGIEL, ESQ. and ZACHARY C. KLEINSASSER, ESQ., Greenberg Traurig, LLP, One International Place,
5  20th Floor, Boston, Massachusetts, 02110, for Premiere Radio Networks, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  United States District Court calls Civil
 3   Action 14-11550, Alharbi v. The Blaze.  Could counsel please
 4   identify themselves.
 5          MR. HALEY:  Good afternoon, your Honor.  My name is
 6   Peter Haley.  I represent the plaintiff, Abdul Alharbi.
 7          MR. GRYGIEL:  Good afternoon, your Honor.  Mike
 8   Grygiel, Greenberg Traurig, and with me is Zach Kleinsasser
 9   from our office as well.  We represent the defendant, Premiere
10   Networks.
11          THE COURT:  Thank you.  This is very late-arising, so
12   I don't know that I'm going to rule today.  And, as I understand
13   it, it's a fait accompli, is that correct?  You sent the money
14   over to the IRS already?
15          MR. GRYGIEL:  We did, your Honor, as required under
16   federal tax law.
17          THE COURT:  Did you all talk about this during the
18   settlement discussions?  Did you tell them what the issue was?
19          MR. HALEY:  So, your Honor, in the course of the
20   settlement discussions, the parties drafted a settlement
21   agreement.  In that agreement, it said that the defendants
22   would pay to Mr. Alharbi ($ sealed) upon receipt of tax
23   verification with his tax identification number on it
24   acceptable to Premiere.  The plaintiff was concerned that the
25   phrase "acceptable to Premiere" would lead to some uncertainty,
```

and accordingly the plaintiff marshalled his own W-8 form providing his tax information, and, as requested, since the money was being wired to my firm, my firm's W-9 account.

So then, in the settlement agreement, it says clearly not that they'll pay when they get the tax information but they acknowledge that they had received the tax information that they requested. It then says that the settlement amount will be paid to a specific account by wire instruction. The agreement is clear. There isn't any ambiguity about it.

THE COURT: Yes, but I don't know what to do because it went to the IRS. I don't know why you did this when there was a dispute over it. I'm in a terrible spot right now. It's not like they're keeping it. They've sent it to the IRS.

MR. HALEY: Well, they sent it to the IRS for the same reason that they allege that Mr. Alharbi had anything to do with the Marathon: because they could, because they thought they could get away with it, and because even a dog knows --

THE COURT: Excuse me. But it's not like they've kept it. That would be a different story. I'm not sure if that statute covers this. I don't know. I'm not prepared to rule on it right now. I'm not prepared to reopen this case. I'm not prepared to give them a contempt order. I don't know.

Why didn't you say you were going to do this?

MR. GRYGIEL: Your Honor, we did. I mean, I notified Mr. Haley five days ahead of time prior to making the payment,

```
 1   which had to come in on the 27th, advising him that the payment
 2   was subject to U.S. income tax, which it is, and that's not in
 3   dispute on the motion, and giving him the chance to make a
 4   different arrangement.  It wasn't made.
 5           THE COURT:  But when it wasn't agreed upon, why didn't
 6   you come to me?  This is a mess, mess.  I don't know the answer
 7   to this.  I got your -- I've been in court literally since 9:00
 8   o'clock.  I got your stuff.  It was too late for me to do
 9   anything.  I'm not going to make them pay over and above.  I
10   mean, let me ask you this:  Do you owe the 30 percent, not you
11   but Mr. Alharbi?
12           MR. HALEY:  I do not know, your Honor.  Mr. Alharbi,
13   there's no -- Mr. Alharbi is a citizen of Saudi Arabia.  He's
14   not a tax resident of the United States.  I don't have a
15   position as to the tax status, but I don't believe that there's
16   anything that prevented the defendants from complying with the
17   obligations that they entered into.
18           THE COURT:  Well, I don't know, and I'm not going to
19   make -- it's unjust enrichment to ask them to pay another
20   ($ sealed).
21           MR. GRYGIEL:  Your Honor, the law is clear.  We've
22   consulted with the tax people in our law firm.  We've looked at
23   this very carefully.  Premiere has an obligation to withhold
24   30 percent.
25           THE COURT:  Well, I read the statute.  It doesn't say
```

```
 1  settlement amounts.  I read the statute.  I don't know if the
 2  word "income."  And I don't know how that applies to libel, and
 3  I don't know how that applies to emotional distress versus
 4  reputational damage.  I don't know.  I just wish I wasn't
 5  catching it in this status.  And I'm not prepared to reopen the
 6  case.  He probably does owe the money, right?
 7          MR. HALEY:  I don't agree with that, your Honor.
 8          THE COURT:  Well, why doesn't he?
 9          MR. GRYGIEL:  There's no question that he does, your
10  Honor.
11          THE COURT:  I don't know.  Excuse me.  There is a
12  question.  This is a settlement of a libel claim.
13          MR. GRYGIEL:  Correct.
14          THE COURT:  There is a question.  I'm not an expert on
15  this.  I don't have the whole division of Greenberg Traurig to
16  sit and look up the tax.  Typically this happens in an
17  employment case.
18          MR. GRYGIEL:  Correct, your Honor.
19          THE COURT:  I don't know.
20          MR. GRYGIEL:  Since 1996, the Internal Revenue Code
21  was amended to make payments for alleged reputational injury in
22  defamation cases taxable income under the Code.  That wasn't
23  the case before 1996.  That's when the Tax Code was amended.
24          THE COURT:  Maybe.  I'm just not prepared to rule on
25  it off the bench, and I'm just annoyed, as you can tell, that
```

someone didn't come to me beforehand -- "annoyed," put it in quotes -- that someone didn't come to me before all this happened because now I'm not going to order them to pay another ($ sealed). I'm just not going to do it. So now it's a question of, should we ask the -- how do you get it back from the IRS? Maybe what happens is, if they're wrong, they have to pay the attorneys' fees.

MR. HALEY: The plaintiff didn't make any remittance to the IRS. The defendants were the ones who remitted the funds to the IRS, and I --

THE COURT: I'm just saying, it may be that you're going to have to file a petition to get it back. And I will order, if there was a breach of this agreement, as compensatory damages your attorneys' fees for getting it back. I mean, why isn't that the solution here? But I just don't think it was -- let me just throw this out here -- wise, pragmatic lawyering to have such a major issue outstanding without coming to me before it was a fait accompli. It was like, I hate to say, pulling a quick one. And you may be right at the end of the rainbow. It's just you could have deposited it in escrow here, and then I could have figured it out.

MR. GRYGIEL: Your Honor, we weren't trying to pull a quick one. We were complying with our withholding obligations under the law.

THE COURT: Excuse me. It was disputed, and you've

taken the decision away from me as to whether or not it applied or not, and you certainly took it away from them as to whether or not there were exceptions to this rule. He's not a tax lawyer. You're representing from the Boston Bar, right?

MR. HALEY: I'm part of the pro bono program from the Boston Bar, correct.

THE COURT: Yes, I mean, do you get any money out of this?

MR. HALEY: No, your Honor.

THE COURT: He's doing it pro bono.

MR. GRYGIEL: I understand that, your Honor, but plaintiff's counsel's law firm, like Greenberg Traurig, is also a very large law firm, and there are resources available to look at this question.

THE COURT: Have you asked tax counsel to look at it?

MR. HALEY: I was not aware until this morning that they had remitted the withholding amount, your Honor. We looked at the issue of the disbursement from our firm, since that's where the money was being wired to, and we're satisfied that we were able to make a disbursement to the plaintiff without withholding.

THE COURT: You had an analysis that this provision didn't apply?

MR. HALEY: I provided the information to general counsel at my firm and the appropriate tax counsel. They

1  advised me that upon receipt of the settlement amount, they
2  would be able to remit the settlement amount to the plaintiff
3  without deduction.
4          THE COURT: Well, what did they say about -- well,
5  that's attorney-client, but I would need some -- let me put it
6  this way: I'm not reopening the case. I will, if the IRS ends
7  up deciding that this is improperly done, I will take as a
8  related case a request for breach of contract and the
9  attorneys' fees and perhaps punitive damages for doing this;
10 but unless you can show me that, I don't know what I can do
11 here. When is he going home?
12         MR. HALEY: Shortly, your Honor, some time in the next
13 30 days, but, you know, I imagine we could pursue the matter
14 whether or not he was present within the United States or not.
15         THE COURT: Excuse me. Whether or not he was here or
16 not, you could pursue the matter for him?
17         MR. HALEY: Correct, your Honor.
18         THE COURT: Okay, so make sure you keep billing
19 sheets.
20         MR. HALEY: Yes, your Honor. That's unfortunately a
21 daily requirement of my life, whether or not I'm getting paid.
22         THE COURT: I very much appreciate your doing it
23 pro bono. I'm really unhappy about how this played out because
24 that's why I'm here, if you knew it was disputed, if you knew
25 there was an issue, if it wasn't part of the settlement

```
 1   agreement, which it apparently was not.  It may be statutory
 2   mandate.  I may have come out on your side.  I just feel as
 3   if -- as I said, it feels like a sleight of hand.  I don't
 4   understand why it wasn't negotiated and put in the settlement
 5   agreement as to what was supposed to happen.
 6           MR. HALEY:  Right.
 7           THE COURT:  Did you just find out about it last week?
 8           MR. GRYGIEL:  Myself, your Honor?
 9           THE COURT:  Yes.
10           MR. GRYGIEL:  No.
11           THE COURT:  So why didn't you say to him, "This is
12   what we need to do"?
13           MR. GRYGIEL:  Your Honor, I did advise plaintiff --
14           THE COURT:  Why wasn't it in the agreement?
15           MR. GRYGIEL:  Well, again, your Honor, with all due
16   respect, I don't think it's my provision to advise the
17   plaintiff's counsel about the tax consequences of the
18   settlement to be received by his client.
19           THE COURT:  It's called good faith and fair dealing on
20   your part --
21           MR. GRYGIEL:  Yes, your Honor.
22           THE COURT:  -- that if you feel as if you had to
23   withhold, it needed to be explicitly put into the settlement
24   agreement, or maybe it would be a deal breaker, or maybe you
25   come to me for a ruling or the IRS for a ruling; but to have it
```

come up afterwards is what's so troubling.

MR. GRYGIEL: Your Honor, again, if you look at the record, I did notify plaintiff's counsel in two very long, detailed letters.

THE COURT: That you were going to withhold?

MR. GRYGIEL: That we were going to withhold, that it was taxable income, and I even suggested -- somebody has to pay the tax under U.S. law, either Premiere, and we have an obligation to. We were willing to pay the full amount to plaintiff's counsel if we could get an indemnification, and I made that offer September 22, black and white in my letter.

THE COURT: So why wasn't it part of the written settlement agreement? That's the kind of material term that you'd think would be.

MR. HALEY: The settlement agreement had a tax reference in there. It acknowledged they had received the tax information, and it had a specific provision for the payment of the settlement amount in a specific amount. And although counsel is correct that he asked my firm on its pro bono engagement to undertake an indemnification of his firm, I'm not in a position to deliver that. And, furthermore, he did not advise, "And we'll just go ahead and pay the withholding amount so as to preclude you from ever getting any relief here."

MR. GRYGIEL: No, we did advise to that, and the record speaks to that, your Honor. And I can sense clearly the

agitation from the Court, and, believe me, I'm sorry we're here too. We had to make the tax withholdings. We don't care who we paid the money to, but the U.S. government under law gets its chunk of the settlement payment.

        THE COURT: It may be so. It is the kind of thing that savvy lawyers negotiate in advance. It's part of the settlement agreement. It's not something that comes up after the fact, after the payment. But I'm not prepared unless I'm persuaded, which I'm not -- I read the statute -- to say that it's wrong that either you or they had to pay 30 percent. I haven't heard an argument that that's wrong.

        MR. HALEY: Well, the argument that it's wrong, your Honor, is that they entered into a contract. They agreed to do something specific. They made a provision for tax information as part of the agreement. And as we've cited to in the 2015 case from the Northern District of California in the *Pizza v. FINRA* matter, the facts and the law are the same. They agreed to do something; they haven't done it. Had they intended to make a withholding, they certainly could have made that provision, as they made the provision to say, "Give us your tax identification number," and they agreed that that had been adequately completed.

        THE COURT: No, but there's no harm if you had to pay it is the thing. I couldn't agree with you more that I wish it had been a provision in the settlement agreement. I'm not

 1  seeing the harm.  Where I'm seeing the harm -- and this is why
 2  I'm not sealing this, okay -- where I see the harm is if you
 3  petition the IRS to get this back and you win, your firm
 4  gets -- how much do you bill an hour?
 5          MR. HALEY:  $725.
 6          THE COURT:  -- $725, or whatever your tax partners
 7  charge, times to get it back, plus interest for Mr. Alharbi if
 8  you get it back.  And I don't know any other way to resolve it
 9  right now.  I'm sure not trying this case now.  And if you get
10  it back, deem it a related case.  You file it right now.  And,
11  I mean, you know, I don't -- your tax people must know.  But,
12  frankly, the problem I had is, when I read the statute and I
13  read what income includes, I had to think he was going to have
14  to pay it.  Either you were going to have to deduct it or they
15  were going to have to deduct it.  That's what I'm not
16  understanding.  You've noticed my frustration and my perfect
17  willingness, if they're wrong, to make all three of them liable
18  for the damages that flow from it.
19          Did you tell him, Mr. Alharbi, that there was probably
20  going to be a 30 percent tax on somebody?
21          MR. HALEY:  Your Honor, I'm not going to speak to what
22  I told or didn't tell my client.
23          THE COURT:  Fair enough, but is this something that
24  was discussed during the settlement negotiations with him?
25          MR. HALEY:  No.  The only thing that was discussed

was, "What do we need to do on a tax basis? Give us this information in a form acceptable to us." I said, "Here's the information, and I'm not putting in a form acceptable to you. You need to tell me that you have what you need."

"We have what we need."

"Fine. Here's the amount. Here's the wire instructions," all in the agreement. There isn't any ambiguity in the agreement.

THE COURT: There is no ambiguity in the agreement. I do think there may have been a breach of contract, but I'm not convinced that there was any damage flowing from it, that's my problem, because I read the statute, and you've given -- so I don't know -- for me to order another ($ sealed) would be gross.

MR. HALEY: Your Honor, I understand the Court's position, and I'll proceed in the way that the Court suggested.

THE COURT: All right, so that's the way we're going to go on this thing.

MR. GRYGIEL: Your Honor, just for a moment, may I just address the *FINRA* case because I spoke over the -- when we received the plaintiff's motion, I called the attorney in San Francisco that represented the defendant. And the difference between that case and this case is, here, as I read plaintiff's motion, in all fairness, there is no dispute that the amount of the settlement payment is subject to withholding.

That is not disputed.  In that case, there was a threshold dispute among the parties over whether the settlement payment was subject to income taxation because here's what happened: There was a termination case.  The plaintiff was an executive of FINRA.  He brought a lawsuit alleging entitlement to back pay and front pay and a remedy under ERISA.  FINRA defended the case saying, "We don't owe you any wages.  We don't owe you back pay.  You're not entitled to front pay," and they prevailed.  The court granted summary judgment, dismissing the plaintiff's back pay and front pay, but said, "You're entitled to a remedy under ERISA of attorneys' fees and that's it," because apparently the plaintiff was excluded from some internal mentorship program being conducted by FINRA.

Lo and behold, the parties go before a magistrate.  They negotiate.  There was no written agreement in the case.  They agreed to a term sheet prepared by the magistrate.  There's no discussion of tax withholding, and several months after the fact, when FINRA puts in the money, they say, "This is wages.  We're going to withhold."  In other words, they took the position in making the settlement payment that was directly antagonistic to that which they asserted in the litigation and on which they prevailed.

That's not the story we have here.  Here there is no dispute, again, under the federal tax law, that this payment has to be deducted because the plaintiff is a foreign national.

```
1              THE COURT:  I'm not saying it's not distinguishable.
2    I'm simply saying there was a requirement for payment in the
3    agreement.  There was no provision for the set-aside payment to
4    Uncle Sam.
5              MR. GRYGIEL:  In the cases that we cited --
6              THE COURT:  Excuse me.
7              MR. GRYGIEL:  Yes, your Honor.
8              THE COURT:  And so in a sense there was a breach of
9    contract.  There was no provision there.  That said, a statute
10   trumps a contract.  And so there may have been a breach of
11   contract, but I don't see what damages it caused because the
12   30 percent was going to have to be paid, or, arguably, the
13   contract was void as against public policy.  But we could have
14   avoided all of this.  Did you just fly up?  We could have
15   avoided all of this.  If someone had just brought it to my
16   attention, we could have posted it in escrow and worried about
17   it later.  So as it is, if you get it back, come back to me.
18             MR. HALEY:  Certainly, your Honor.
19             THE COURT:  Okay, we stand in recess.
20             MR. GRYGIEL:  Thank you, your Honor.
21             THE CLERK:  All rise.
22             THE COURT:  Can I just say something on the record.
23   This is not a sealed proceeding except for the amount.
24             MR. GRYGIEL:  That's fine with Premiere, your Honor.
25   Thank you.
```

           (Adjourned, 3:50 p.m.)

                C E R T I F I C A T E



UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )



        I, Lee A. Marzilli, Official Federal Court Reporter,
do hereby certify that the foregoing transcript, Pages 1
through 17 inclusive, was recorded by me stenographically at
the time and place aforesaid in Civil Action No. 14-11550-PBS,
Abdulrahman Alharbi v. The Blaze, Inc., et al, and thereafter
by me reduced to typewriting and is a true and accurate record
of the proceedings.
        Dated this 19th day of October, 2016.




            /s/ Lee A. Marzilli
            _____
            LEE A. MARZILLI, CRR
            OFFICIAL COURT REPORTER